IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:24-cr-00320-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    2. ASHLEY DANIELLE BLACKCLOUD,
        a/k/a Ashley Hernandez, a/k/a "Trinity Black Cloud,"

    Defendant.

## RESPONSE TO MOTION TO DISMISS COUNTS [ECF No. 71]

During the last mayoral election in Colorado Springs voters were confronted with the visceral image of a burning cross staked in front of a campaign sign emblazoned with the word "NIGGER," scrawled in blood red paint over the actual name of the Black candidate running for office. The defendant claims that making this image and then spreading it was a "stunt" or a "prank." So, too, have defendants calling in bomb threats to schools or airports. But if that was true, she forgot to tell the mayor the punchline. He was terrified. And nothing about her later comments dismissed the notion that the burning cross — an infamous symbol of racial terror associated with some of the bloodiest traumas of American history — was anything other than what she had *intended* it to be: a message purporting to be from a hate group seeking to intimidate a racial minority. The Defendant's Motion to Dismiss the Indictment, ECF No. 71, should be denied. A jury can determine for itself what the burning cross meant, whether the defendant intended to convey that meaning, and whether she acted maliciously when she spread

1

false information about it.

## I. The defendant confuses whether the Indictment is adequately pled with whether even a well-pled accusation is consistent with the First Amendment

The defendant does not appear to be alleging that the Indictment is insufficiently pleaded under Rule 7(c)(1), which is not cited in her brief. And, in any event, that claim fails.

The defendant concedes that it is sufficient as a matter of law for the Indictment to simply state that what has occurred is a violation of the statute. Def. Mot. at 4-5; *See United States v. Redcorn*, 528 F.3d 727, 734 (10th Cir. 2008) (holding that indictment setting forth the "charged offense in the words of the statute itself" along with "the date, place and nature of the charged illegal activity" is "entirely sufficient to give the defendants fair notice" and is "all that our precedents require").

The Indictment does exactly that. Paragraph 4 tracks the statutory language, tailored to the facts of this case: she is charged with willfully threatening and maliciously conveying false information about the threat conveyed by a burning cross. ECF No. 1 If there was doubt about the factual basis for the charge, paragraph 5 clears it up: the purpose of the conspiracy was to "maliciously convey false information during an election about an alleged attempt to intimidate CANDIDATE 1 by means of the threat conveyed by a burning cross." *Id.* Other paragraphs allege that the defendant willfully threatened someone with a burning cross, *Id.* at ¶ 6(d), and also conveyed false information about efforts to intimidate someone else "by means of fire:" she agreed to send an email that states that the burning cross in front of a campaign sign defaced with a racial slur was an "extreme act" of attempting to "intimidate" and "keep out" CANDIDATE 1, and as part of "hate crimes" being spread by CANDIDATE 1's rival. *Id.* ¶¶ 6(e) and 7(c), 7(f)-(h).

All the cases cited by the defendant relate to problems with pleading the actual elements of the charge. Def. Mot. at 5. But even the defendant concedes that the Indictment is sufficiently crafted: the crime has only the four elements set forth on page 7 of her brief and those elements precisely track the statutory language in paragraph 4 of the Indictment.

The defendant could also be arguing that even when the government adequately states all the elements in an indictment, it must —*in addition* — plead allegations that negate a possible affirmative defense under the First Amendment. Tenth Circuit precedent forecloses this argument. *United States v. Neal*, 692 F.2d 1296, 1303 (10th Cir. 1982) ("[A]n indictment need not anticipate affirmative defenses to be sufficient.").

## II.   The defendant is asking the Court to make a factual decision about the meaning of a burning cross, but that's a jury question

The defendant's motion is not really about pleading. It's about whether the Court can decide as a matter of law before trial that the First Amendment protects burning a cross in front of a Black candidate's campaign sign, defaced with a racial slur, and then spreading false information about it. Def. Mot. at 5 (citing *Dennis v. United States*, 341 U.S. 494, 514-15 (1951)).

The defendant's suggestion that the Court can conclude as a matter of law that facts in the Indictment are protected speech ignores Tenth Circuit language to the contrary: "absent an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury." *United States v. Wheeler*, 776 F.3d 736, 742 (10th Cir. 2015) (internal quotation and citation omitted). In order to dismiss in this posture there must be *no question* that the alleged conduct is protected. *Id.* But whether something is actually a "true" threat — not just "'hyperbole' or other statements that when taken in context do not convey a

3

real possibility that violence will follow," *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) — is a fact question that only a jury can answer. *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) ("We have consistently held that whether a defendant's statement is a true threat or mere political speech is a question for the jury."); *United States v. Leaverton*, 835 F.2d 254, 257 (10th Cir. 1987) ("[T]he question of whether a defendant's statement is a 'true threat' or a 'political speech' is generally a jury question, and the mere fact that a particular statement may have 'political overtones' does not mean that it cannot, at the same time, constitute a 'true threat.'").

Moreover, the defendant's argument is nothing like the one in *Dennis*, which was a facial challenge. The defendant does not appear to actually be questioning the constitutionality of § 844(e), just its application. *Viefhaus*, 168 F.3d at 397 (distinguishing *Dennis* on that basis and declining to overturn conviction on First Amendment grounds). Even if she did, Courts have concluded that the statute is not facially unconstitutional. *United States v. Williams*, 690 F.3d 1056, 1063-64 (8th Cir. 2012).

All of this is sufficient to deny the defendant's motion to dismiss the Indictment. Whether speech is protected depends on factual determinations that only a jury can decide. *See, e.g., United States v. Dillard*, 795 F.3d 1191, 1202 (10th Cir. 2015) (describing how the same statement can generate different perceived meanings and that how to resolve those differences is a fact question that must be left for a jury to decide).

**III.   The Constitution's promise of freedom of speech does not encompass the right to (1) intentionally burn a cross threatening a political candidate or (2) maliciously make false statements about threats of violence committed by others to influence an election**

If the Court delves into the Indictment's allegations to decide whether they plausibly

4

violate the First Amendment, it must confront two questions raised by the defendant. Does the First Amendment prevent Congress from criminally punishing willfully making a threat even if the person does not have subjective intent to threaten? And separate and apart from any True Threat analysis, does 18 U.S.C. § 844(e) *only* proscribe that type of unprotected speech?

The answer to both questions is no. Nothing about the True Threat finding, by itself, requires an analysis of intent. And section 844(e) criminally punishes *any* unprotected speech, not just True Threats. The Indictment's allegations do not violate the First Amendment and it should not be dismissed.

> A. *If the cross burning is a true threat — and it is — then § 844(e)'s mens rea requirement makes it consistent with the First Amendment*

The defendant argues that § 844(e) requires a True Threat to be compatible with the First Amendment. The defendant then says that a True Threat requires an intent to make a recipient feel threated. Thus, she appears to argue, the Indictment must be dismissed because there is no allegation that the defendant *intended* to make the recipient of the threat feel intimidation or fear, so the speech was protected by the First Amendment. Def. Mot. at 7 (citing *United States v. Heineman*, 767 F.3d 970, 977 (10th Cir. 2014)).

But her second premise is just not true. [W]hether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a threat . . . .*The existence of the threat depends not on the mental state of the author but on what the statement conveys to the person on the other end.*" *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (emphasis added). To the extent that *Heineman* held otherwise, it was premised on the conclusion that *Virginia v. Black*, 538 U.S. 343 (2003), required that True Threats possess a level of intent beyond recklessness. *Heineman*, 767 F.3d 970, 979-80 (10th Cir. 2014). But

5

*Counterman* explicitly rejected that reading of *Black*, stating instead that *Black* did not decide whether the First Amendment demands a showing of intent to establish a True Threat. 600 U.S. at 74 n.3. *Heineman* is no longer the law. *Currier v. Doran*, 242 F.3d 905, 912 (10th Cir. 2001) (noting that panel decisions of Tenth Circuit are not binding "when that precedent is superceded by contrary decisions of the Supreme Court").

The lesson of *Counterman* is that True Threats cannot be criminally prosecuted unless the authorizing *statute* requires at least recklessness or a conscious disregard for substantial and unjustifiable risks that conduct will cause harm to another. *Counterman* 600 U.S. at 79. "In the threats context, [recklessness] means that a speaker is aware that others could regard [her] statements as threatening violence and delivers them anyways." *Id.* (internal quotation marks and citation omitted).

All of this caselaw supports a two-step analysis to determine whether a criminal statute authorizing prosecution of threats is consistent with the First Amendment. *See Counterman*, 600 U.S. at 74-81 (deploying, in sections II.A and then II.B, this same framework). First, the Court should consider whether the burning cross image in the Indictment is a True Threat. If it is, then the second question is whether § 844(e) requires a *mens rea* greater than recklessness before that speech can be punished.

### 1. **Burning a cross in front of a specific Black candidate's mayoral campaign sign was a True Threat**

The Indictment sufficiently alleges that this particular cross burning was a True Threat, not protected political speech.

Cross burnings can convey both "threats of violence and messages of shared ideology." *Black*, 538 U.S. at 354. This means that not every cross burning is a threat. For example, the First

6

Amendment permits a gathering of the Ku Klux Klan to burn a giant cross in a field during a large rally while carrying firearms. *Brandenburg v. Ohio*, 395 U.S. 444 (1969)(concluding that relatively private intramural Klan affair with speeches and references to political action was protected advocacy).

On the other hand, the burning cross is "inextricably intertwined with the history of the Ku Klux Klan," and its bloody history of racial violence. *Black*, 538 U.S. at 352. As Justice Thomas recounted in his extensive history of the symbol, burning a cross in specific places or with connections to specific people is a harbinger of impending violence and a "tool of intimidation." *Id.* at 355.

> When a cross burning is directed at a particular person not affiliated with the Klan, the burning cross often serves as a message of intimidation, designed to inspire in the victim a fear of bodily harm. Moreover, the history of violence associated with the Klan shows that the possibility of injury or death is not just hypothetical. The person who burns a cross directed at a particular person often is making a serious threat, meant to coerce the victim to comply with the Klan's wishes unless the victim is willing to risk the wrath of the Klan. Indeed, . . . individuals without Klan affiliation who wish to threaten or menace another person sometimes use cross burning because of this association between a burning cross and violence.

*Id.* at 357. This statement from *Black* is all the Court needs to rule that a jury could conclude that a reasonable person, familiar with historical context, would interpret the burning cross described in the Indictment as a threat. *See United States v. Floyd*, 458 F.3d 844, 849 (8th Cir. 2006) (explaining that a court's role is not to decide "that a particular communication *is* a threat as a matter of law, but whether there is sufficient evidence for a jury to decide that a reasonable recipient would interpret it as a threat"). This is sufficient reason to deny the defendant's motion.

True, the burning cross here wasn't placed in a particular person's yard so as to clearly convey a threat to the property owner. But it was still directed at intimidating a *specific person*.

7

The defendant wrote "NIGGER" on a sign that literally had someone's name on it, set up a burning cross in front of the sign, and then filmed the scene. ECF No. 1 at ¶6(d). Contrary to her assertion that there are "no facts in the Indictment that suggest the actual cross burning was meant to be witnessed by anyone or that it was actually witnessed by anyone," Def. Mot. at 14, the defendant broadcasted the video to the largest audience she could find.  ECF No. 1 at ¶¶ 6(e), 7(c). As CANDIDATE 1 will testify, and logic shows, this action clearly targeted him with the threat of violence (or so a jury could conclude).

Thus, in context, the burning cross here was a "declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another." *Viefhaus*, 168 F.3d at 395. And the recipient could "reasonably consider that an actual threat has been made." *Id.* at 396. The recipient's reaction is weighed heavily in determining whether speech is a True Threat and unprotected by the First Amendment. *See United States v. Wheeler*, 776 F.3d 736, 746 (10th Cir. 2015)(evaluating the nature of a threat by looking at, among other things, the evidence that the victims were, in fact, frightened by a religious leaders' calling upon his followers to kill).

The defendant confuses things again by conflating her letter with false information *about* the threat with the threat itself. Def. Mot. at 13-14. Before she could write the email though, she had to create the threat (the photos and video attached to the email of the burning cross in front of the sign) and a story bolstering the idea that it had actually occurred. That the threat wasn't sent directly to the threatened individual does not change the analysis. *See, e.g., United States v. Lockhart*, 382 F.3d 447, 452 (4th Cir. 2004) (letter threatening to kill President, delivered to grocery store clerk, was True Threat given its contents and fact that it was delivered solemnly and outside of any political rally). What she calls a "stunt," or a "prank," Def. Mot. at 11 & 12,

8

wouldn't have achieved its purpose unless she could convince others that it was real, just as anyone calling in a "prank" bomb threat or calling to burn down a school as a "stunt" or a "prank" aims to inspire terror even if they don't actually intend to reify it. The email purports to condemn the threat: it doesn't discount its reality.

Lest there be any doubt about whether the burning cross here was a True Threat, the government also intends to call a legal historical expert to testify to all of the historical context set forth in *Black*. *See* Exhibit A. The expert will tell the jury that nothing about the burning cross here could reasonably be perceived as political speech, hyperbole or jest. The jury will then hear CANDIDATE 1's testimony and can decide for itself the factual issue of whether the burning cross here was a true threat.

> **2.** **Section 844(e)'s *mens rea* requirement protects against overbreadth and makes criminal prosecution here compatible with the First Amendment**

Not only does the Indictment allege a True Threat, but the statute under which the defendant is charged comports with the First Amendment.

Unlike in *Heineman*, which dealt with a criminal statute with no stated *mens rea* requirement, the analysis under § 844(e) is easy. Criminal liability attaches for false information when it is conveyed "maliciously" and with "knowledge" that it is false and for threats when they are made "willfully." 18 U.S.C. § 844(e). "Willfulness" is more culpable than recklessness: it requires awareness that the natural, probable consequences of an action will cause a result. *United States v. Youts*, 229 F.3d 1312, 1315-16 (10th Cir. 2000). "Malice" and "knowledge" likewise connote levels of culpability higher than recklessness, so there cannot be any doubt that 844(e) permits criminal punishment under *Counterman*. *See United States v. Williams*, 690 F.3d

9

1056, 1063 (8th Cir. 2012) (noting, even pre-*Counterman*, that Congress's "explicit inclusion of requisite mental states" in § 844(e) "forecloses" unconstitutional prosecution.).

At several points in her brief, the defendant disclaims an intent because she had the motive of actually helping CANDIDATE 1 get elected. But motive and intent are famously different. Someone who takes a loaf of bread without paying for it because they are hungry intends to commit theft, even if they have no malicious motive. A person who fires a gun at an attacker intends to kill them, even if the motive is self-defense. A person who grabs a gun intends to possess it, even if they have no motivation to do something bad with it. *See United States v. Baker*, 508 F.3d 1321, 1324 (10th Cir. 2007) (explaining that motive is irrelevant to a possession crime and providing other examples of how the intent/motive distinction saturates criminal law).

The defendant's mantle of motive does not cloak her intent with First Amendment protection. The Eighth Circuit rejected a similar argument that the defendant's speech—a fake bomb threat called into an airport, prosecuted under § 844(e)—was protected because the defendant had no subjective intent to actually threaten anyone. The motive for making the threat — "pranking" the airport — didn't matter. It was enough that he intended to convey the threat. *Williams*, 690 F.3d at 1062.

The same is true here. The defendant willfully made a threat — she was aware that the natural and probable consequences of her action would result in the victim being intimidated and fearful. Her email, pictured in paragraph 7(g) of the Indictment makes clear she wanted others to believe the "anonymous tip" related to a cross-burning was real (otherwise, why go to all that effort of actually building the cross, setting it on fire, and then getting a photo?). She referred to

"this" [the cross burning] as an attempt to keep a Black candidate out of the election, she repeatedly referred to the incident as a "hate *crime*" and accused CANDIDATE 2 and his supporters of "carrying out this nonsense." Everything about the email presumed the threat was real. And any "political stunt" on her part actually required that others think the threat was real. If anyone knew that it was actually "fake" then no one would, as she now claims, actually have been angered, outraged, or mobilized (except maybe against her personally). Def. Mot. at 11, 14. Actually mobilizing anyone required making others think the *threat* was *real*. The indictment alleges willfulness when it came to making the threat and it is up to a jury to decide beyond a reasonable doubt whether she had that *mens rea*.

> **B.    Section 844(e)'s prohibition on "maliciously false" information renders it compatible with the First Amendment, separate and apart from whether there was a True Threat**

The defendant willfully threatened the mayor when she set up a burning cross — a True Threat — in front of one of his campaign signs and then distributed photographs of it. For the reasons already explained, prosecuting her for those actions is consistent with the First Amendment. But that is only one way she violated § 844(e).

The defendant also violated the statute when she later, knowing it was false, "maliciously conveyed false information" about an attempt being made to intimidate someone by means of fire. Of course, a burning cross is an effort to intimidate "by means of fire." *Cf. United States v. Wilde*, 120 F.3d 468, 470 (4th Cir. 1997) (reading separate subsection of § 844 to effectuate clear plain terms: "unquestionably, setting fire to a wood cross as a means of intimidation constitutes the use of fire in this ordinary sense").

The indictment contains copious allegations that the defendant conveyed false

information, knowing it was false about an alleged attempt being made to intimidate someone with fire:

| Statement in Email | Reason False |
| --- | --- |
| "My family and I are completely outraged by the jesters (sic) made towards running [CANDIDATE 1]" | Angelica Martinez, "angiem," is not a real person, has no family, and was not really outraged by gestures made towards the candidate because the gestures were, in reality, made by the defendants, who conspired to send the email. |
| "We were sent this footage today from an anonymous tip." | The defendants created the footage |
| "Many times, harassment and intimidation tactics target voters and candidates based on categories and identities that receive special protections under federal and state law, such as race. This is another one of their tactics to keep [CANDIDATE 1] out" | The reference to a plural "their" implies that an outside group was using intimidation to deter CANDIDATE 1 from running. But there was no outside group trying to intimidate CANDIDATE 1 and, instead, the defendants were trying to help him |
| "It's clear who's sending this message and the people of this city need to know!! [CANDIDATE 2] is pushing hard to win this candidacy and I'm completely appalled by how his following and members are carrying out this nonsense." | Neither CANDIDATE 2 nor anyone from his following or "members" carried out the cross burning. It was carried out by the defendants |

That leaves what the defendant calls a "political publicity stunt" or a "political prank" and what the government will call malicious falsehoods. To act "maliciously" is to act "intentionally or with willful disregard of the likelihood that damage or injury will result." *United States v. Bradbury*, 848 F.3d 799, 803 (7th Cir. 2017). The contemplated injury includes the fright that comes from a threat. *Id.* Or, as another court put it, to act maliciously means with intent to "vex, annoy, or injure another or with an intent to do a wrongful act." *Williams*, 690 F.3d at 1064.

The maliciously false information conveyed is not protected under the First Amendment

because that "intentional lie" has no constitutional value, *Gertz v. Welch*, 418 U.S. 323, 340 (1974), and the "First Amendment" does not shield fraud," (*Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003).To be sure, falsity *alone* is insufficient to take speech outside the First Amendment's protections. *United States v. Alvarez*, 567 U.S. 709, 719 (2012) (plurality opinion). But the speech here was not merely or solely false. It was malicious. And malicious speech is unprotected and subject to criminal liability under §844(e)

Justice Breyer made this clear in his controlling *Alvarez* concurrence. Citing another hoax statute — 18 U.S.C. § 1038(a)(1) — he wrote that "[s]tatutes prohibiting false claims of terrorist attacks, or other lies about the commission of crimes or catastrophes require proof that substantial public harm be directly foreseeable, or, if not, involve false statements are very likely to bring about that harm." *Alvarez*, 567 U.S. at 735-36 (Breyer, J., concurring). Thus, such false claims are among the type that can be punished without violating the First Amendment. The defendant's false statements here about a domestic terrorist organization targeting the mayor with a well-known symbol of hate serving as a harbinger of bloody racial violence checks all the boxes: substantial public harm is directly foreseeable. *See Williams*, 690 F.3d at 1064 (noting that criminalizing lies about threats is independently consistent with the First Amendment, separate and apart from whether those threats are true threats).

## IV.     The audacity of the defendant's actions should not shield them from judicial scrutiny

In support of her claim that the Indictment should be dismissed on First Amendment grounds, the defendant draws attention to the fact that § 844(e) has not previously been used to prosecute a cross burning. But she admits that the statute proscribes bomb threats. And as any casual reading of history — or the testimony of the government's expert — will make clear, the

13

burning cross was often a precursor to bombings by the Ku Klux Klan. Exhibit A (noting the tragic 1963 bombing of the 16th Street Baptist Church in Birmingham). Thus the jury could conclude that the burning cross here *was* a bomb threat. Of course, because of the Klan's historical associations with terrorism, it was also other things. But that is just part of makes it so malicious.

Separate and apart from the defendant's ahistorical rendering of the message conveyed by a burning cross, the fact that the statute has not been used to prosecute a case like this just stands for the proposition that the defendant's malicious conduct was particularly audacious; it doesn't mean the statute can't be used in this context.

The clear text shows that a §844(e) prosecution is particularly appropriate here:

> Whoever (**Ashley Blackcloud)**, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce (**email**), willfully makes any threat **(a burning cross)**, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual (**an email falsely claiming that supporters of CANDIDATE 1 burned a cross and thus sent a message consistent with that symbol's historical association with bombings, arsons, lynchings, shootings, and other serious bodily injury**) or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire (**a burning cross**) or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

18 U.S.C. § 844(e) (annotated).

Nothing about this statute is ambiguous and when the text is clear that text — not the statements of selected lawmakers or committees, *see* Def. Mot. at 8-9 — controls. *See, e.g., Pulsifer v. United States*, 601 U.S. 718, 737 (2024) (quoting maxim that "no law pursues its . . . purposes at all costs."). Courts in other circuits have had no trouble applying the plain text of unambiguous provisions of § 844 to impose criminal liability on criminal entrepreneurs who had

violated those statutes in novel ways. *See, e.g., United States v. Hayward*, 6 F.3d 1241, 1246-47 (7th Cir. 1993) (noting that clear text of § 844(h) applied to cross burnings because Congress punished *any* use of fire to commit a felony and not just arson more generally). If the text fits, then the Court cannot acquit. At least not by dismissing a facially valid indictment without any finding of facts by a jury related to intent or the meaning of the burning cross symbol.

| | |
|---|---|
| By: *s/Bryan Fields*<br>Bryan Fields<br>Assistant United States Attorney<br>U.S. Attorney's Office<br>1801 California St. Suite 1600<br>Denver, CO 80202<br>(303) 454-0100<br>Bryan.Fields3@usdoj.gov | By: *s/Rebecca Weber*<br>Rebecca Weber<br>Assistant United States Attorney<br>U.S. Attorney's Office<br>1801 California St. Suite 1600<br>Denver, CO 80202<br>(303) 454-0100<br>Rebecca.Weber@usdoj.gov |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of February, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this case.

*/s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office