IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Criminal Action No. 24-cr-00320-RMR

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.

DERRICK PATRICK BERNARD AND ASHLEY DANIELLE BLACKCLOUD,

        Defendants.

-----------------------------------------------------------------

REPORTER'S TRANSCRIPT

Final Pretrial Conference

-----------------------------------------------------------------

        Proceedings before the HONORABLE REGINA M. RODRIGUEZ, District Judge, United States District Court for the District of Colorado, commencing on the 13th day of May, 2025, in Courtroom A901, United States Courthouse, Denver, Colorado.

APPEARANCES

For the Government:
BRYAN FIELDS and CANDYCE CLINE, United States Attorney's Office, 1801 California Street, Suite 1600, Denver, CO 80202

For the Defendant, DERRICK PATRICK BERNARD:
A. TYRONE GLOVER, JR., Tyrone Glover Law, LLC, 2590 Walnut Street, Denver, Colorado 80205

For the Defendant, ASHLEY DANIELLE BLACKCLOUD:
BRITT M. COBB, Law Offices of Britt M. Cobb, 3570 East 12th Avenue, Suite 200, Denver, Colorado 80206

Reported by SADIE L. HERBERT, RPR, RCR, 901 19th Street, Denver, CO 80294, (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

P R O C E E D I N G S

(Proceedings commenced at 1:55 p.m.)

THE COURT:  We're here today in United States versus Bernard and Blackcloud, 24-cr-00320.

Could I have appearances of counsel, please.

MR. FIELDS:  Good afternoon, your Honor.  Bryan Fields for the United States.  And I'm joined at counsel's table by AUSA Candyce Cline.

THE COURT:  Good afternoon.

MS. COBB:  Good afternoon, your Honor.  My name is Britt Cobb.  It's nice to meet you.  I'm counsel for Ms. Blackcloud.

THE COURT:  Good afternoon.

MR. GLOVER:  Good afternoon, your Honor.  Tyrone Glover on behalf of Derrick Bernard, who appears in custody.

THE COURT:  Give us one moment, folks.  It's been a busy afternoon today.

So we have trial beginning on Monday in this matter, so we are here today for a final pretrial conference.  It does look like we have a couple of motions that are still pending.  We had two motions to dismiss, which the Court has ruled on.

I have received the government's proposed voir dire and Mr. Bernard's proposed voir dire at 166; government's at 156.  The joint exhibit list at 159.  The government's witness list at 160.  And Blackcloud's witness list at 166.

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

I also have a couple of motions in limine, which I will hear briefly from counsel on, if they wish to elaborate, again, briefly.  Otherwise, I will rule on those motions today.

I also have proposed jury instructions and a couple of competing jury instructions.  We can discuss the jury instructions today.  It would be my hope that we can resolve disputes.  If not, I'll take it under advisement, but -- well, let's see how it goes.  If we need to have a further charging conference, we will have an actual formal charging conference at the end of the presentation or close to the presentation of evidence during the trial so that in the event that something changes or there's different evidence than what we anticipated that came out, et cetera, et cetera, that you will have the opportunity to make your record with regard to the jury instructions.  However, I also recognize, it's hard to try a case when you don't know what the instructions will be, so I do endeavor to do that, to the extent I'm able to, but there are some things that have to be ruled on during the course of trial.  And so to the extent we need to do that, we will.

And then if there are other issues you have, we will deal with those during the course of this hearing today or I will set a time when we can do that at another time.

I do not have any trial briefs, it appears, so I take it I'm not going to get those, right, the time has passed, right.  Very well.  And I do have, as I indicated, the motions

in limine.

So let's talk about general trial procedures.  Some of you have tried a case with me, some of you haven't, so we'll go through it.

I do use a condensed trial schedule.  What that means is that I generally -- well, not generally -- I will start the first day of trial hopefully as close to 9:00 a.m. as possible.  That will give our jury folks an opportunity to get the jurors in here, get folks up.  I don't know how many trials we will have on Monday.  It does sound like we have a few, so sometimes it takes a little bit more time to get all of the jurors up here and seated and ready to go.  After that first day, I will start trial each morning promptly at 8:00 a.m.  We will take a morning recess for about 15 to 20 minutes at somewhere around 10, 10:30 a.m.  We will break at noon for 30 minutes.  There will be no afternoon break, but we will conclude our trial day sometime between 2:30 and 3 o'clock.

Counsel, whoever it is whose case it is, whose case-in-chief it is needs to be prepared to go through 3 o'clock with witnesses or be prepared to rest.  We will move quickly.

On the first day, if there are any issues which the Court needs to take up prior to the commencement of our first day of trial, counsel needs to advise chambers no later than 12:00 p.m. the Friday before trial.  We'll either take it up

24-cr-00320-RMR     Final Pretrial Conference     May 13, 2025

that afternoon -- actually, this week, it won't be able to be that afternoon. We'll take it up Friday morning at 8:00 a.m. But if there's no issues, you don't have to be here at 8:00 a.m., since we're not going to start until 9. So let me know. And just remember, Judge Rodriguez does not like surprises, so don't get here at 8:30 and tell me you have issues you would like to take up, that will get grumpy face, okay.

And because we start early on the remaining days, if you have an issue, don't assume that we're going to be able to take it up in the morning or that I'll have time. You have to let me know in advance so that I can schedule it in. Most days, at the end of trial day, I have another hearing set, that's when I handle my criminal docket. So again, communication with chambers is really important. You need to let Ms. Myhaver know in advance so we can schedule you in. I will give you your time, I just got to work it out and don't surprise me at the last minute with it, okay.

Opening statements, generally, I give the parties 15 minutes for each side. It's not per defendant; it's per side.

Do the parties have any different requests in this case?

MR. FIELDS: Not from the government, your Honor.

MR. GLOVER: Not from Mr. Bernard.

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294   (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

MS. COBB:  I think we'll be great, your Honor.  Thank you.

THE COURT:  Very well.

Are there any witnesses -- I hope not, I don't think so -- that will be testifying by video, that you are going to request to testify by video?

MR. FIELDS:  No, your Honor.

MS. COBB:  No, your Honor.

MR. GLOVER:  No, your Honor.

THE COURT:  It's unanimous.  No witnesses will appear by video.

Listen, in this courtroom, our acoustics are not always the best and these get to be long days for our reporter, so my request is that when you address the Court, you stand and you go to the podium.  Not for this purpose, you are fine at counsel table.  I also do not allow crosstalk amongst counsel.  If you need a moment, just simply say, your Honor, may we have a moment, then go to the back and confer.  But if you are standing up speaking, you speak to the Court.  Don't turn your back to the Court, don't be talking amongst counsel.  Please just maintain decorum on that front.  Otherwise, it gets very, very difficult for the reporter to follow who is talking, what's going on, et cetera, et cetera.

I do not allow speaking objections, and I am pretty stringent about this.  If you have an objection, you simply

24-cr-00320-RMR      Final Pretrial Conference    May 13, 2025

stand, you may stay at counsel table, make sure you are speaking into the microphone, state your objection, simply state, objection Rule 403, Rule 402, Rule 801, whatever the rule is.  I get it, sometimes the rule number escapes you.  That's not an opening to give the Court a diatribe about your objection.  Just simply state succinctly what the basis for the objection is.

If your objection requires further elaboration, you simply stand, objection, 401, your Honor, may we approach.  And I will allow you to approach, if you need to make a record.  But we will make it at sidebar, okay.  I will not allow you to make a speech before the jury.

Is that clear?

I do not like to dress down a lawyer in front of the jury, but if you violate that rule, you can be pretty sure what's coming, all right.  I will give you your opportunity to make your record at the sidebar.  Please don't abuse the opportunity.

So jury selection and voir dire, I do have the questions.  Again, I only ask you to give me those questions that the parties agree that they believe should come from the Court, as opposed from the lawyers.  I am a proponent of lawyer-driven voir dire.  So I have standard questions that I will ask.  They are the usual, what is your name, what do you do, even where do you get your news, although everybody now

gives a very different answer than they did 30 years ago. You can get those standard questions from Ms. Myhaver. I do have some questions that the parties have given that I do believe are appropriate for the Court to give, and I will go through those here in a moment. If there are additional ones that the parties agree they would ask that the Court ask, as opposed to the lawyers during their portion of voir dire, let me know. Other than that, I give, again, each side 15 minutes for the voir dire by counsel.

Is there any request to alter that?

MR. FIELDS: Your Honor, the government believes that a little bit more voir dire in a case like this would be appropriate.

THE COURT: How much?

MR. FIELDS: With the Court's indulgence, 25 minutes.

THE COURT: That would be by side.

Counsel for the defense.

MS. COBB: I support that, if the Court is okay with it.

MR. GLOVER: Yes.

THE COURT: Between both defendants, you will have a total of 25 minutes, and you will talk amongst yourselves about who is going to be first. Understood?

MS. COBB: Understood, your Honor.

THE COURT: That is fine. I will give you each side

9

24-cr-00320-RMR      Final Pretrial Conference    May 13, 2025

25 minutes, as long as it is not redundant. And I will give you a signal if it's getting to be redundant, such as, counsel, perhaps we could move along. But you'll understand, all right.

So the defendant will, in this case, have 11 peremptory strikes, and the government will have 7. I will ask for as many jurors as I can get. Again, remember, I think we have several trials starting that day, we may have to be a bit patient if we are running lower on jurors to bring up additional jurors from other courtrooms. There's just logistics that have to be dealt with, so we'll need to find our patience that morning.

Any other questions, issues with regard to voir dire before we start talking about the specific questions?

MS. COBB: Your Honor, I do have a couple of questions.

THE COURT: All right.

MS. COBB: General practice would be to have -- are we going to have 14, I assume?

THE COURT: So Ms. Myhaver will give you the seating chart and how we seat the jurors.

MS. COBB: And so are we doing sort of the classic method of striking anywhere in the box and then replacing from the venire?

THE COURT: Only if they're being stricken for cause.

Once we pass the venire for cause, then we will have

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294   (303)335-2105

24-cr-00320-RMR        Final Pretrial Conference    May 13, 2025

you do peremptories.

MS. COBB:  Okay.  So will there be more than 14 in the box?  We'll have people kind of out here?

THE COURT:  Yes.

MS. COBB:  Got it, okay.

And then we pass the venire for cause, and then anybody can kind of pick off whoever they want?

THE COURT:  Yes.

MS. COBB:  But there's a presumptive jury --

THE COURT:  Yes.

MS. COBB:  -- in the event you don't use all the peremptories?

THE COURT:  Yes.

MS. COBB:  Thank you.

THE COURT:  And my suggestion is that you meet with Ms. Myhaver in advance of trial, both to deal with any logistical issues, with any IT issues, and certainly with regard to the voir dire.

MS. COBB:  Thank you very much.  And I'll ask her about jury questionnaires as well.  Thank you.

THE COURT:  One thing I will just note, it is my practice to refer to jurors by number.  I will explain to the jury that it is not my intention to be too informal or rude, but for purposes of the record, it is much easier to follow if we refer to jurors by number.  So it will start with Juror

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

11

24-cr-00320-RMR     Final Pretrial Conference    May 13, 2025

No. 1 up in the top left-hand corner here of the jury box, that juror will be referred to as Juror No. 1.  When they stand to speak, they will tell us their name, et cetera, et cetera.  You may refer to them by name, if you wish to do so, but you should also refer to them by juror number.

Common mistake I see so very often in court is that the lawyers will begin engaging in discussions with the jurors and not identify who is speaking, and I mean, it's your record, but it's not such a good thing for you at the end of the day if it's a mess.  So I strongly encourage you to follow suit.

I have also found that juror number helps us to move along more quickly and also avoids confusion or issues if someone wants to use a different surname, pronoun, this, that or any other, it's respectful of all jurors, and I use that practice with all of them.  How you want to refer to the jurors is up to you.  But again, you need to also identify them by juror number on the record, all right.

Any questions about any of that?

MR. GLOVER:  Your Honor, just a question.  How does the Court handle the alternate juror and are we restricted from exercising peremptories to the end?

THE COURT:  Three, I think, is what the alternate --

THE DEPUTY CLERK:  That is correct.  So the alternates will be seated at seats 29, 30 and 31, and those peremptories will be exercised in the final round.

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

MR. GLOVER:  Okay.

THE COURT:  With regard to the jury instructions and the verdict form, I don't think there were competing verdict forms that were submitted.

Am I right about that?

MS. COBB:  That's correct, your Honor.

THE COURT:  So we have the jury verdict form.

To the extent that a jury instruction is either, A, stipulated or the Court has already ruled on it, you may use the jury instruction in your arguments before the jury.  If it is a disputed jury instruction, you may not.

Are the parties requesting sequestration of witnesses?

MS. COBB:  Yes.

THE COURT:  Upon motion of Defendant Blackcloud, the Court will enter an order of sequestration for all witnesses pursuant to Federal Rule of Evidence 615.

Ms. Myhaver will post on the door the order; however, all parties are instructed that they are to provide notice to all of their witnesses that the Court has imposed a sequestration order that must be followed.

Sequestration means sequestration.  So the witness may not be present in the courtroom during the testimony.  They also may not review any transcripts of the testimony or arguments in the case, and counsel is not allowed to share with any witness what the testimony has been during the course of

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

the case.

Yes, Mr. Fields.

MR. FIELDS:  Your Honor, we would ask for Special Agent Ethan Doherty to be our advisory witness at counsel's table.  He was the case agent in this case, he is also a witness, but as is typical, we need his advice during the trial.

THE COURT:  Yes, you will be allowed the one advisory witness.  But he is also subject to the sequestration order, which means he may not discuss any of the testimony that has happened in this case with any witness before their testimony.

Any questions about sequestration?

Additionally, I always think it goes without saying, which means I better say it, once a witness has taken the stand, they are frozen.  So if you have a witness on the stand and we take a break, you are not allowed to discuss that witness' testimony or anything about the case with that witness before they complete that testimony.  So in theory, if you have a witness on the stand, I take a break, and then we come back from break and I say to the witness, did you discuss this case in any way, shape or form with any of the counsel in this case, their answer better be no.

Clear?

MR. FIELDS:  May I just -- one caveat to that, your Honor.

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

THE COURT:  Well, we'll see, what's your caveat?

MR. FIELDS:  I do think defense counsel should be allowed to talk to the Defendants if they take the stand. There's currently a case pending in front of the Supreme Court right now over this exact issue.  I don't know how the Supreme Court is going to rule on it, but I think out of an abundance of caution, I would want defense counsel to meet with the Defendants if they take the stand.

THE COURT:  If the government has no objection to that, I will allow it only with defense counsel.  And this is not a huddle.  So Mr. Glover, you may speak with your client, not with the co-defendant and vice versa.

MR. GLOVER:  Understood, your Honor.

THE COURT:  And it's not everybody from your office, all right.  Again, it's not a huddle.  Plus, the break won't be that long.

The government has listed 11 witnesses; is that right?

MR. FIELDS:  That's right, your Honor.

THE COURT:  These are all will call witnesses?

MR. FIELDS:  May I have just one moment, your Honor, to consult it one more time.  Yes, your Honor, those are will call witnesses.

THE COURT:  Here is the thing, if you say you're going to call a witness, you need to call the witness, because the defense may be relying on that.  So unless and until you tell

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

the Defendants ahead of time that you're not going to call them, I'm going to expect that witness to show up.  And generally, I will expect them to be in the order in which you have listed them.

Now, I recognize that things may happen.  But under the rule, if I don't like surprises, I will want to know if you are having to take witnesses out of order, all right.  This is not also trial by surprise.  So I know that the government generally does this anyway, but I will expect you, if you are going to have to take a witness out of order, that you confer with defense counsel and just let them know at a reasonable amount of time, not in the two minutes before that witness takes the stand, all right.

MR. FIELDS:  Understood, your Honor.

I would just like to note for the record that our witness order and list right now was conditioned upon stipulations to authenticity in another stipulation we'll be filing shortly with regard to DNA witnesses, so I expect that communication to continue.  We have had a good dialogue regarding all of this, but that's the reason our witness list is so short and it's just will calls at the moment.

THE COURT:  I did note that on your exhibit list, and I appreciate that.  It's fine, just let us know.

If you need information about the submission of hard copies of exhibits, consult my practice standards.  It's 2(c).

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294   (303)335-2105

24-cr-00320-RMR       Final Pretrial Conference    May
13, 2025

It's important that you designate someone from each side to meet with the courtroom deputy at the end of each day to finalize the list of exhibits admitted.  It doesn't seem like that may be such a big issue in this case, since it's not as document intensive as some of our cases.  But nonetheless, it is important for the record.  Sometimes the lawyers think they have admitted something that didn't get admitted or whatever. It is not admitted until Ms. Myhaver says it's been admitted. So you can argue with her all you want, I will just tell you the pre-ruling on that will be, if Ms. Myhaver says it's not admitted, you need to admit it, all right.  So figure that out at the end of the day.  If you need to just do a housekeeping in the morning to admit it first thing, that's fine, I'll work with you on that.  But make sure that it's clear and that she does have the exhibit, that it is properly marked and that it has been properly admitted.

If it's a stipulated exhibit, you still need to move to admit it the first time you use it.  Real simple, real fast, your Honor, we move to admit Exhibit Number 1, it is a stipulated exhibit, and may we publish.  And I will say, yes, Exhibit 1 is admitted and you may publish.

It is important that you request to publish the exhibit.  I know that seems kind of old fashioned and esoteric, but we find that it prevents error.  That may we publish and my saying yes is the signal to the team to turn on the screens to

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

allow the jury to see it.  You will need to train yourself and make sure you are asking to publish and make sure it's being published.  Otherwise, you'll be talking about an exhibit and think that the jury has seen something when in fact they are watching a blank screen, okay.  So make sure you do that.

I highly recommend that when you come in to confer with Ms. Myhaver about the technical issues for the courtroom that you sit in the jury box and look at your exhibits on the screen that is in the jury box.  Every two seats, there's a jury box screen for the jurors.  That screen is smaller and has different resolution than the screens you may be looking at at your table.  So what you think appears clear is small, blurry and difficult to see, so make sure.

We will have these large screens that are in the back of the courtroom up and running.  Generally, that screen will -- to my right -- will be turned toward the potential jury panel during voir dire and then for the gallery during trial. The screen closest to the jury box will be turned toward the jury.  Sometimes, it is easier to watch if there are video surveillance footage or something like that, sometimes it is easier to watch on those screens.  Again, I highly recommend that if you want the jury to follow along and see what you think they're seeing that you sit in that jury box and make sure about that, okay.

MR. GLOVER:  Your Honor, just in that same vein, when

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

would the Court be available -- I'm sorry if I missed this -- for us to kind of come in and do a dry run of the tech?

THE COURT:  Sure, we're available at Ms. Myhaver's order.  So Ms. Myhaver will set that up with you.  She's the one you need to coordinate with.

MR. GLOVER:  Thank you, your Honor.

THE COURT:  Yes.

Demonstrative exhibits, I don't know if you are going to have any in this case.  If so, you need to confer with the other side and show them the demonstrative exhibit before you show it.  I won't give you a hard and fast timeline, but if it's ten minutes before you are going to put it on, you are going to have more trouble, all right.

If you intend -- I don't know, in this case, if this is a case that you would be interested in doing that -- but if you are presenting a demonstrative exhibit during your opening statement, you must meet-and-confer with opposing counsel about that before you flash it up on the screen.  If everybody has seen that for the first time when you flash it up in your opening statements, your opening statements will be rocky.  And if you really want to be able to use it, you better be able to change it right on the fly, because if I order there are things have to come out or change or whatever, you've got to do it right then, before we open, otherwise, you're not going to be able to use it, okay.  That would be one of those things that

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR      Final Pretrial Conference     May
13, 2025

if you have a disagreement about, you would want to notify us probably by noon on Friday that we have a dispute about this. Nine times out of ten, I find that the lawyers can work it out. If you say, this is an argumentative word, take this word out and I'll be okay with it, usually, you can work that stuff out. But if you can't -- I recognize there's stuff you can't always work out -- I'll hear it, but you have to let me know and be prepared to change it on the fly.

Are there any other procedural, kind of technical things that we need to talk about before we get into the more substantive things?

MS. COBB:  I have one other question.

THE COURT:  Yes.

MS. COBB:  Since Mr. Glover and I are both lawyers on the defense side, do you want us to go in any specific order for each witness or, for example, if one witness is more pertinent to Ms. Blackcloud, I would go first and he can do cleanup and vice versa?

THE COURT:  That's perfectly fine.

MS. COBB:  Thank you.

THE COURT:  I just expect that you will not be unnecessarily duplicative.

MS. COBB:  Right.  And that would kind of be the point, so someone who doesn't really have much to say doesn't have to go over all of it.

THE COURT:  Exactly.

MS. COBB:  Thank you.

THE COURT:  Anything else?

MR. FIELDS:  Your Honor, other exhibits that we think are likely to come in but have not been stipulated to, what is the Court's guidance of using those exhibits in an opening?

THE COURT:  Be careful.  If you use it in opening and there's an objection, I likely will sustain the objection until it's been ruled upon.

MR. FIELDS:  Thank you, your Honor.

THE COURT:  Anything else?

Just a last housekeeping matter, as I have indicated, at the end -- so we will conclude each day somewhere between 2:30 and 3 o'clock.  At 3 o'clock, I take up my criminal docket, so you will need to remove everything from the tables. And I do really mean everything.  Our marshals ask us to keep these tables cleared off.  So no pens, no paper clips, no pieces of paper, no nothing, nada.  So you will need to be prepared to clean everything off the table.

And again, that's why you cannot assume that I'm going to take up whatever it is you want to take up with the Court at the end of the day, because I have other matters and we have the marshals waiting with other defendants that need to be brought in.  So you've got to let me know in advance so I can let the marshals know, and we can kind of keep the wheels of

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

justice moving here, all right.

Anything else?  Any other questions?

Let's move to -- so I have a motion in limine by Defendant Bernard to limit reference to prior convictions, and that is Docket No. 144.  And the government's response is at Docket 164.  I have reviewed the pleadings on this issue.  I'll hear briefly any additional argument.

Mr. Bernard, since it's your motion, I will give you first crack at the argument, if you wish to.

MR. GLOVER:  Just to be briefly heard, your Honor, on I think a point that the government raises in their response.

I think the exact reason that they set forth for why they should be allowed to go into the circumstances of this offense is the exact reason why the jury should not.  I think they point out that this particular offense demonstrates contempt for the law.  I think, really, any alleged offense demonstrates that.  I think the test of whether it is probative to go into the facts and circumstances is whether it bears on truth, veracity and credibility and whether the danger of unfair prejudice does not outweigh that probative value.

To go into a homicide conviction and somehow try to tie that in a way to truthfulness as it relates to testimony in this completely unrelated matter, I think just runs the risk of inflaming the passions of the jury, of essentially tainting them just looking at Mr. Bernard and saying, well, he's a bad

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

guy if he has that conviction, so he must have potentially done this.  And I really struggle to see how the nature of this particular offense has any specific probative factual bearing on his credibility and this particular matter.  But the potential for it to taint the jury, I think, is just magnanimous.

THE COURT:  Tell me what the particular circumstances of this particular offense are that you are referring to.

MR. GLOVER:  My understanding -- and again, I was not the lawyer on this case, and I am not acquainted with the discovery or the facts -- but it's my understanding that this was a -- what they alleged was a -- and one of the reasons why I'm struggling, your Honor, is because the principal in this matter was just, I think, acquitted two weeks ago, so it's sort of like talking about a homicide that they sort of found that the individual that Mr. Bernard was supposed to have potentially put up to this from being in jail didn't even perpetrate it, but that was, I think, the gist of the allegations, is that he instructed someone, while he was in custody, to perpetrate a homicide.

THE COURT:  Okay.

MR. GLOVER:  And so I don't see how -- I don't see the nexus.

THE COURT:  Hold on a minute.  Hold on.

I'm also struggling to understand what the facts were.

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

I will give the government an opportunity to explain what the facts are that they would propose to introduce in this matter. But as I understand, the basic assertion is that Mr. Bernard solicited or requested some third person to commit a homicide.

MR. GLOVER:  That is my understanding that I can extrapolate from the complaint.  He was not the principal, he was incarcerated at the time, somebody else did it.

THE COURT:  And he did this while he was incarcerated?

MR. GLOVER:  Those were the allegations.

THE COURT:  And as he -- well, he was ultimately convicted of this crime?

MR. GLOVER:  It is currently on appeal.  But yes, he was ultimately convicted, yes.

THE COURT:  And what was the sentence he received for this conviction?

MR. GLOVER:  The sentence that is presently pending, that he has yet to remand for, is life without parole, plus 96 years.

THE COURT:  Life plus 96 years?

MR. GLOVER:  Yes.

THE COURT:  All right.  And is there evidence that the crime required proof of a dishonest act or a false statement?

MR. GLOVER:  My understanding is there was not evidence to that end.  But maybe the government may know, and I would reserve the right to potentially be able to respond.

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May
13, 2025

THE COURT:  And is this the only crime that we are talking about?

I recognize this may be the most salient, in terms of your motion, but Rule 609 provides any crime that meets the criteria.  Are there others?

MR. GLOVER:  Your Honor, it's my understanding that there are not others that would be appropriate.  But I have not received a proffer of sorts from the government as to what they believe would be relevant to introduce.  This one was the most obvious because of --

THE COURT:  And you received that proffer, as it relates to this one?

MR. GLOVER:  Right.  Well, yes, via their response.  I think I may have preemptively made my argument, assuming that that for the impeachment, but they have not told me there's others that they intend on bringing forth.

THE COURT:  And let me ask you a different, but related, question.  Are you objecting to the government's stated intention to introduce evidence that the crime at issue in this case was committed by the Defendant while he was incarcerated?

MR. GLOVER:  I was not under the impression that that was evidence that would be presented to -- as part and parcel of -- that this case was committed while the Defendant was incarcerated?

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

THE COURT:  I may have misread something, so that's why I'm asking you this question.

MR. GLOVER:  It's not my understanding.

THE COURT:  Did I misread it?

MR. FIELDS:  And that's a -- you didn't, your Honor, but that's a confusion on our part, so I apologize for that.

THE COURT:  Okay.  So I read it right, but that's not your intention?

MR. FIELDS:  Not our intention, your Honor.  Or at least, those aren't the underlying facts.  The solicitation for murder happened while he was incarcerated.

THE COURT:  I understand that, but -- well, that satisfies a lot of my questions, because I have questions about how that happened.  So never mind.  And I understand now.

MR. GLOVER:  Thank you, your Honor.

THE COURT:  Mr. Fields.

MR. FIELDS:  Your Honor, I think there are like two issues actually that we want to cross-examine on.  The first is just the mere fact that he is serving a life sentence.

The second has to do with a little bit more as to the nature of the conviction and as to the fact that the solicitation happened while he was already incarcerated.  So let me -- just sort of general argument about both.

Rule 609 presumes, as a matter of law, that all felony convictions are at least somewhat probative of truthfulness.

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

So there's a presumption that a felony conviction is going to come in.

In this case, we have that presumption.  And I think it really comes down to Rule 403.  And we're really sort of aware of that.

The government has absolutely no intention at all of using the words murder, homicide, killing, murder for hire, anything about that.  We understand that that would be more prejudicial than probative and don't intend to do that.  Instead, what we would like and what we propose to do is, if the Defendant takes the stand, to cross-examine him on one of the -- sort of nature of the offense, which again, is something that's allowed under Rule 609, and that's the sentence that was imposed.  So the fact that he is serving life without parole, in the government's view, means that sort of the oath and sort of the normal guardrails to witness testimony wouldn't apply to this particular defendant.  This is not someone that's going to be cowed into telling the truth when they otherwise would not because of the penalty for perjury.  For Mr. Bernard, the penalty for perjury would do nothing, in terms of marginal deterrence.  We think that that is something that the jury should know and be able to evaluate and that its probative value, especially in it's shorn of any mention of sort of the underlying statute, the underlying crime, that that is more probative than it is prejudicial.  And so the presumption we

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

should be allowed to cross-examine on it should apply, should be able to at least ask questions related to that.

THE COURT:  So -- well, I'm sorry, I don't mean to interrupt you.  Go ahead and finish your argument.

MR. FIELDS:  With regard to the second one, your Honor, this has to do with the fact that this particular crime was committed while he was already serving a sentence, while he was already incarcerated.  In our view --

THE COURT:  Wait, wait, when you say "this particular crime," you're talking about the prior crime, the murder?

MR. FIELDS:  Yes, your Honor.  I apologize.  Yes.

THE COURT:  Okay.

MR. FIELDS:  Again, that's the source of my confusion, I apologize for that.  Yes, we are talking about the murder for hire.  That happened while he was incarcerated.

And in the government's view, that, again, goes to the normal guardrails that would apply to any other witness, respect for the oath, respect for the law, understanding that consequences will follow if you lie do not apply to this particular defendant.  That is probative for his willingness to tell the truth.  In the same way it would be probative if there was a witness up there that didn't take the oath at all, that would be probative to their truthfulness.  In fact, the law presumes that the oath really matters and the penalties for perjury are vital to every single witness.  In this particular

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

case, those guardrails would not induce truthfulness of a witness who is otherwise potentially inclined to not tell the truth, and that's something the jurors should understand.

And so we think the 403 balancing here weighs in favor of at least allowing questioning on those facts.

THE COURT:  Well, here is the question that I have.  First of all, I appreciate the government's attempt to balance and mitigate the prejudice by taking this position.  But the question I really have is:  Does it truly mitigate the prejudice?

Because if you tell a jury that someone is serving a sentence of life without the possibility of parole and not explaining what the underlying nature or statutory name of the offense is and/or giving the date, doesn't it just allow the jury to speculate as to what that may be for?

MR. FIELDS:  Your Honor, I would think that the jury could -- instruct the jury not to speculate.  And we would presume and the law requires that the jury follow the instructions.

In the alternative, if the Court --

THE COURT:  Isn't this really an all or nothing kind of thing?

MR. FIELDS:  I don't think the law makes it an all or nothing thing.  And I think the law gives the Court tools to allow this balancing in a way that's going to allow the jury to

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

evaluate his truthfulness or credibility in circumstances where he's unlike just every other witness who will be on the stand in this case or any other future proceedings.

The alternative proposal that the government would have in mind is questioning along the lines of, you know, Mr. Bernard, you understand as you testify here today that the -- you cannot be -- your sentence cannot be increased for perjury, or the perjury statute wouldn't allow for additional punishment in this case as you testify, things like that. So even if we didn't get into the fact that he's serving a life sentence, the jury would understand that this witness is unlike any other witness they have seen in court.

MR. GLOVER: Your Honor, if I could just add very briefly.

THE COURT: Yes.

MR. GLOVER: I understand, for any other witness there's some potential, marginal relevance there. But we are talking about Mr. Bernard, who is on trial, and the jury is going to be judging whether or not the prosecution has met their burden. And for them to hear through his testimony that he is already serving a life sentence plus 96 years, just the danger of how that will prejudice them in their deliberations and their considerations, the seriousness of the lens that they view this case through, if they view this as, you know, a purely academic exercise, this guy is already doing life plus

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

96.  So it's one thing if it's a witness and you are talking about witness credibility.  But the very person that they are tasked with judging, to have it come out during their examination that they're doing a life sentence, it has just such great potential consequences.

THE COURT:  What about Mr. Fields' proposal just to simply cross-examine him indicating that the perjury statute would not allow further penalty for perjury in his particular situation?

MR. GLOVER:  I just think that that would confuse the jury.

THE COURT:  How?

MR. GLOVER:  Because they're going to wonder why, and they're not going to be able to get the answer as to why.  I mean, I could see that being the first juror question coming in deliberations, why isn't he subject to the -- we have to say, sorry, we can't tell you.

THE COURT:  Well, I have those questions come up all the time in these cases.  The question is if it's a proper question.

MR. GLOVER:  Your Honor, I think we can anticipate we are creating an ambiguity, something that the jurors are going to want to know the second that it leaves the examiner's mouth, that they're going to want to know why he is not subject to or really even affected by perjury, and we are going into that

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

knowing we would not be able to answer that question.  So I think, with the marginal, marginal value that arguably has, the danger of unfair prejudice, of confusing the jury and essentially laying up a question that would tempt them to speculate and we would know we're not going to put that speculation to rest, I still would maintain is not appropriate, your Honor.

THE COURT:  Well, here is the thing.  Rule 609 does -- I wouldn't necessarily refer to it as a presumption -- but it clearly anticipates that it will apply to situations where the witness' character for truthfulness is and can be attacked by evidence of a criminal conviction.  There is no dispute in this matter that there has been a criminal conviction.

In particular, 609(1)(b) is applicable in as much as it says that such evidence must -- not may -- must be admitted in a criminal case in which the witness is a defendant.  That is precisely the situation we're talking about here.

It then puts it upon the Court to determine whether or not the probative value of the evidence is outweighed by its prejudicial effect.  It is probative in this matter that the defendant has been convicted of a -- and we will need specifics, Mr. Fields, of what this conviction was and what the sentence was.  It is undisputed that there has been this conviction.  So if this witness testifies, the presumption would be that his prior criminal conviction would be admitted.

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

I take it, this isn't more than 10 years or anything of that nature either.

So then, pursuant to 609(1)(c), the evidence must be admitted -- again, must -- if the Court can readily determine that establishing the elements of the crime require proving a dishonest or a false statement.  I don't have a lot of heartburn reaching the conclusion that a murder for hire would be an act of dishonesty in this matter.  Those matters are probative to the witness' truthfulness.  And that is what 609 is designed to address.

While, it is certainly prejudicial in any context to have associated with one testimony that you have been convicted of a murder for hire and are serving a term of life imprisonment, it does not mean, in and of itself, that the probative value is outweighed by the prejudice.

The government has indicated that, in order to mitigate any prejudice, it is willing to limit its cross-examination.  The rule specifically provides what can be used.  All that can be used is the nature or statutory name of the offense.  So the Defendant could be asked whether or not or isn't it true that you have been convicted of -- and we need, again, the exact statutory offense, the date and the sentence that was imposed.  Period.  Nothing more.

The question that the Court now needs to resolve, in my mind, in mitigating the prejudicial effect vis-a-vis the

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

probative value -- first of all, let me be clear, again, it does appear that there is probative value of this evidence. While yes, it may be prejudicial, it is a fact and a fact that the rules have contemplated has probative value, so the question is, can the prejudice be mitigated here. I believe that the question could be asked of the witness whether or not he has been previously convicted of a crime that carries a lengthy sentence, the date, and that is sufficient.

Mr. Fields may make the argument, which is not the same as evidence, later that this witness has no motive or no reason to tell the truth or is not worried about a penalty for lying to the jury because he's already serving a sentence. He may also make the argument, such as he will, that this particular defendant, by virtue of the fact that he has already been convicted of a crime may or may not follow the rules. But that's argument. That's not evidence.

So the Court will allow the limited cross-examination or impeachment, should the witness testify, simply to indicate that the witness has been convicted of a prior felony offense and the date on which the offense or the conviction occurred.

Mr. Fields, do you need to say more than simply that he was previously convicted of a felony offense punishable by 10 years or more?

MR. FIELDS: I would prefer lengthy, your Honor, as opposed to just 10 years or more because 10 years, for a young

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294   (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

man, I'd say isn't that long.

THE COURT:  You don't think 10 years in prison is a long time for anyone?

MR. FIELDS:  Potentially, your Honor.  But I do --

THE COURT:  You're just saying I'm old, so it seems like a long time for me?  Come on.

MR. FIELDS:  No, your Honor.

But I do think that there would be circumstances where the penalties for perjury might still cause you some pause, perjury in federal court with 5 years, like that's a pretty significant, marginal increase in your sentence.  That might still be enough to deter you from lying.

THE COURT:  If you say 10 years or more, that's lengthy, that might still cause you pause, it's not like 3 years.

MR. FIELDS:  It's not like 3 years, your Honor.  I prefer lengthy, but I understand the Court's position.

THE COURT:  You may say it was punishable by 10 years or more.

Anything further, Mr. Glover?

MR. GLOVER:  Just brief record, your Honor.  I understand the court's ruling.

THE COURT:  Yes.

MR. GLOVER:  We maintain the position that the homicide would not be the type of offense that I think would be

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

considered a dishonest act under 609, and I think --

THE COURT:  Do you have any law to support that?

MR. GLOVER:  Yes.  United States v. Walker, 974 F.3d 193 and also --

THE COURT:  Murder for hire is not an offense that would under the nature of dishonest act or false statement?  Is that what you are --

MR. GLOVER:  Crime of violence, like a murder, which is how this was prosecuted.

THE COURT:  Murder for hire.

MR. GLOVER:  Prosecuting him as the principal, when you aid or abet, they prosecute you as a principal, not an accessory after the fact, so he was charged with a homicide, which is why he is doing the life without parole.

THE COURT:  Well, give me the cases that say that -- again, you did not have specifics of what this particular crime was that he was convicted of and what the elements were.  So first of all, we need that.

Secondly, under Rule 609, give me the cases that say that -- let's call it murder for hire, in this particular instance, does not constitute a dishonest act or false imprisonment for purposes of 609(1)(c), and I will take a look at it again.

MR. GLOVER:  Thank you, your Honor.

And I assume -- I believe that the timeline we need to

36

have this brought to the Court's attention is by 8:00 a.m. on Friday?  I anticipate having that done sooner, but just so I understand --

THE COURT:  Yes, noon.

MR. GLOVER:  Noon.

THE COURT:  Noon on Friday.

I mean, technically, it would have to be before your client testifies.  But certainly, sooner rather than later so you can make your trial strategy decisions.

MR. GLOVER:  Certainly, your Honor.  Thank you.

THE COURT:  And if those cases exist, I don't think it will take that long to find them.

MR. GLOVER:  Agreed.

THE COURT:  Anything else, Mr. Fields?

MR. FIELDS:  Just that the specifics of the crime are docketed at 51-1, your Honor.

THE COURT:  Great.  Thanks.  Put that in your motion so I have it all in one place.

Anything else on that front?

MR. GLOVER:  No, your Honor.  Thank you.

THE COURT:  Let's talk about the admission of expert testimony by, I believe it was, Mr. Lawrence.  This is Ms. Blackcloud's motion.  The Defendant is seeking to exclude testimony by the government's proffered expert, Frederick M. Lawrence, who is an attorney and has been endorsed in the area

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

of semiotics and history of hate crime.

Specifically, the Defendant asserts that Mr. Lawrence would offer opinions regarding the meaning of a burning cross as a threat of racial violence, that racially motivated violence would be directed at Candidate 1, and -- that racially motivated violence was at Candidate 1, and as to the meaning that would be attached to the burning of the cross described in the indictment would be a message of intimidation to Candidate 1 and his supporters.

It is clear that the government bears the burden under Rule 702 of demonstrating such expert testimony is admissible. And I think we're all familiar with the Daubert standard and Rule 702's requirement for determining who is qualified as an expert.

I will say that the government does assert that Mr. Lawrence's testimony is important to provide context for lay jurors, some of whom may have only glancingly known of America's history or its long struggles with racial violence and may need more context for why a black man in America might be afraid for his life when he sees a burning cross in front of a sign with his name on it.

I will tell you, candidly, the Court has some concerns about Mr. Lawrence's proffered testimony here.  First of all, the assertion that a lay juror needs context for a burning cross seems a bit dubious, but I will certainly hear argument

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

on that, if you want to provide further argument.  But here, a specter of that, as it would relate even specifically to a black man, which Candidate 1 is and was at the time this occurred, a sign with an epithet painted on it and a cross burning in front of it seems to me something that would be within the purview of any reasonable juror to reach a determination of its significance.  And at the end of the day, it seems to this court that that is exactly what the jury must ultimately determine in this case, that is to say, whether a reasonable juror would find that this was a true threat.

The notion that a lawyer's opinions or a historian's opinions about how crosses burning have been seen in history seems to usurp that jury's role as the fact finder here.  And that is fundamentally the concern that this court has about this expert testimony.

So with that, I will let Ms. Blackcloud argue first, since it is her motion.  But I do note that it is the government's burden to meet the admissibility standard in this matter.

MS. COBB:  Thank you, your Honor.

I'll be brief.  The Court has articulated our primary concerns as well.

As I read Mr. Lawrence's opinion, he's really purporting to opine about two things:  One is to give a history of cross burning in America, which he basically just pulls from

24-cr-00320-RMR   Final Pretrial Conference   May 13, 2025

a United States Supreme Court decision in block form and puts in his letter.  And then, to sort of reach the conclusion that anyone who burned a cross would mean it as threatening and anyone who saw it would take it as threatening.  And I do think that that absolutely not only usurps the function of the jury, but it's essentially exactly the opposite of what the Virginia v. Black case said, which is you have to look at the entire context.  There is no such thing as, under the law, as a cross burning being prima facie evidence of an intent to threaten or a threat.  So I think, on both of those fronts, this opinion fails 702.

If Candidate 1 wants to testify that he was afraid and why and knows something about this history, I don't see that there's anything inappropriate about that.  If the government wants to ask prospective jurors if they know anything about that, that may be appropriate.  But I just don't think it's a lawyer's job to tell the jury about history and what the United States Supreme Court has said about the history of cross burning.  It's really the Court's role to tell the jury what the law is, not an expert.

And then, our other points related to Mr. Lawrence are just about his -- he's obviously an accomplished person, but it more relates to his ability to give any sort of real opinion based on data or studies or evidence about how people in Colorado Springs, in this time period, would view this.  And

24-cr-00320-RMR       Final Pretrial Conference     May
13, 2025

that's our basic position, your Honor.

THE COURT:  Who will argue this for the government?

MS. CLINE:  I will, your Honor.

THE COURT:  All right.  Ms. Cline.

MS. CLINE:  Your Honor, I start by noting that Mr. Lawrence is not a practicing attorney.  Based on his CV, I don't believe he's practiced since 2005.  He's a legal academic, he's a scholar, he's student of history, legal history, semiotics, everything that is required to really put together a really significant piece of work that he did, which was his book, Punishing Hate, which was thoroughly researched. It's the data that really underpins his opinion.

As I listen to the Court's record, I believe the Court's primary concern here is relevance under 702.  And while the violence and terror of the Klan against black people in this country is well known, it is a topic taught in primary schools, that history is not necessarily ubiquitous.  The jurors in this matter will come from all over the state with a wide variety of backgrounds.  They may not have grown up in the United States before they became citizens.  So the history of the Klan and its violence is very specific to this country, and we can't assume that all jurors will know that history.

His opinion is not as simple as the defense suggests. His opinion really is tailored to the context provided to him in the indictment.  And again, his data set is not simply

Virginia v. Black.  It is really a lifetime of scholarship and practice in this area that helps him to form his opinion about what this particular message conveys to a reasonable person, to the victim in this particular case and so --

THE COURT:  Wouldn't the testimony of the victim be the better evidence of what this message conveyed to the victim?

MS. CLINE:  I think it is incredibly impactful evidence, and the government is certainly going to solicit that evidence from the victim.  But that victim can't necessarily testify to the history of what this particular symbol means.  That's where we find the relevance of this.

THE COURT:  Can the witness testify as to what the particular history in Colorado Springs is and in the particular circumstances of this case?

MS. CLINE:  He would not testify to the history of the Klan or the history of cross burning in Colorado Springs.

THE COURT:  Or Colorado?

MS. CLINE:  I don't think he would go that granular as to Colorado.  It would be based on his survey and the facts of American history.

THE COURT:  Okay.

MS. CLINE:  Ultimately, he is not going to be rendering a legal opinion.  This is factual data.  And so we would ask the Court to permit this witness to testify.

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

THE COURT:  Any final word, Ms. Cobb?

MS. COBB:  No.  Thank you, your Honor.

THE COURT:  Well, as the Court noted, it is the government's burden to publish that the expert testimony which it proffers is appropriately admissible under Rule 702.

In this particular matter, while it does appear that Mr. Lawrence is a scholar and has information generally about the history of racial animus in this country, I do not believe that it is appropriate in this case.

At the end of the day, it is the jury's duty, guided by this court's instructions and rulings on issues of law, to make the determination of whether or not a reasonable person in the victim's situation would believe this particular incident to be a threat.  While perhaps, arguably, some context about the history of cross burnings in this country generally may provide some useful context in this case, it appears to this court that such testimony also is potentially more prejudicial than probative in this situation by ultimately insinuating that, indeed, this cross burning had necessarily a threatening intent, given the history in the country.  I'm not saying whether it did or did not.  That's not for this judge to decide.  That's for the jury to decide.

The prosecution and the defense can adequately present to the jury the context in which this occurred.  That context including that this was in the context of a mayoral race and

43

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

they will have the testimony of Candidate 1 and other witnesses who were actually in Colorado Springs at the time of these events, who are familiar with the context and circumstances surrounding this particular event, which is the best evidence, as opposed to some general extrapolation of this country's general history.

Therefore, the Court finds that the government has not carried its burden to establish that this testimony by Mr. Lawrence is admissible, and the Court will, in its discretion, exclude the testimony.

I did say we were going to talk specifically about the voir dire questions, and then I just skipped over it.  So let's go back.

It has come to my attention that perhaps there was another motion that I did not rule on, that there had been a prior motion by Mr. Bernard to sever this matter.  Is that still a request by Mr. Bernard?

MR. GLOVER:  It is, your Honor.  And that motion is still pending.

THE COURT:  Do you want to give me your brief argument on that ground, and I'll let Mr. Fields briefly respond.

MR. GLOVER:  Your Honor, most of our argument was set forth in the motion.  We do think that -- I understand the Court is not -- will become shortly acquainted with the facts, but we do believe that the Defendants -- and I'm not trying to

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

telegraph too much about our defense -- are adverse, especially as it relates to either Defendant's right to testify.  And our belief is that we would essentially be placed in a position, either Defendant would be placed in a position where they would have to struggle with -- especially given their relationship, they are husband and wife -- their decision on whether to exercise their right to testify in their own defense and potentially adversely affecting the outcome of their spouse's case.  And so under those particular circumstances, we believe severance is still appropriate so as to not force really either party into a position where they're having to choose between potentially adversely affecting their loved one's case and their constitutional right to testify.

And I realize that's a bit cryptic and vague, but it is because I don't believe it is appropriate for me to sort of proffer, at least at this point, what I believe the evidence may or may not be.  But I do have a good faith belief that there are some particular elements that are not reconcilable.

THE COURT:  That makes it a little bit hard for the Court to rule.

MS. COBB:  Your Honor, it's probably not my place, but I would say that I agree with what Mr. Glover is stating.  And I don't know if there's a way for us to address the Court in camera or ex parte, in some way where we're not laying out the defense in open court.

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

THE COURT:  You can't have it all ways.

MS. COBB:  I understand the Court's conundrum.

THE COURT:  I hear what you are saying.  But if you want to sever, you have to give me an appropriate basis on which to do it, and I don't have one right now.  And I don't know how the government responds either, so I don't know.  And it is your burden to show that there's a basis appropriate for severing.

Mr. Fields.

MR. FIELDS:  Your Honor, we rest on our pleading.  It is very clear that joint trials are preferred.  Anything related to their testimony wouldn't create issues, they will be there to be cross-examined, so there's no issues the government can see that would prevent having a joint trial.

THE COURT:  If there's nothing further.

MR. GLOVER:  Your Honor, and I think Ms. Cobb had a good suggestion, is this something that we could potentially approach the bench and try to offer some additional context?

THE COURT:  Well, are you proposing that we do this ex parte and that the government wouldn't --

MR. GLOVER:  No, your Honor.

THE COURT:  All right.

(Continued on next page)

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

(At sidebar)

MS. COBB:  I think that -- why don't you --

MR. GLOVER:  Well, it's my understanding --

MS. COBB:  Ms. Blackcloud's defense -- and I have already revealed this to the government, so I don't think it's -- it's all related to the intent behind the threat and whether it is a threat.  It's not a whodunit in her case.  I think it's a I did it and this is why, and I don't believe that that's Mr. Bernard's defense.

MR. GLOVER:  It's my understanding that Ms. Blackcloud's testimony, she will be potentially testifying that my client was there and present for this staged cross burning, and so I think that is --

MS. COBB:  It puts her in a bind of testifying because she doesn't want to implicate --

THE COURT:  Mr. Fields.

MR. FIELDS:  Your Honor, that's not a reason to sever.  Defendants have to make hard decisions when it comes to testifying.  If they testify, they have to tell the truth, but I'm aware of no case where any court has ever said there's a reason you can't have joint trials.

THE COURT:  That was going to be my question.  Can you give me a case where the court has, court of appeals in this circuit -- and I know that this circuit has addressed this issue of severance on multiple occasions -- has indicated that

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

this is an appropriate basis for severance?

I'm sympathetic to your client's position, but that doesn't mean she's entitled to a separate trial.  These are all the same facts and circumstances, the same crime, and to require the government, the Court and others to have two separate trials on the exact same facts, with the exact same witnesses is not a basis for a severance.  So unless you can give me some case law that says that she's entitled to a separate trial on this basis -- again, I'm not unsympathetic to her situation -- but she is alleged to have engaged in conduct, and the decision to engage in this conduct is what brings her here today.  All criminal defendants, unfortunately, deal with sometimes difficult circumstances at trial that they have brought upon themselves based upon decisions they made, and this seems to be one of those situations.

MS. COBB:  Understood, your Honor.  And I am not -- I do not have supporting authority at my fingertips.  If I find it, I will notify the Court.

THE COURT:  All right.

MS. COBB:  Thank you.

(Continued on next page)

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

(In open court)

THE COURT:  For the reasons set forth on the record, the Court will deny the Defendants' -- and it sounds like it's now a joint motion of the Defendants -- to sever the trial that was filed at Docket 81.

Any other motions that are outstanding?

MR. FIELDS:  The government is not aware, your Honor. And I'm sorry about the -- not bringing the motion to sever up earlier.

THE COURT:  That's all right.

So are we ready to talk about the proposed voir dire questions?

So the government has provided a full panoply of voir dire questions, and I do not read these as all questions that the government is seeking for the Court to ask, particularly in light of its request and the Court's granting for additional time on voir dire.

Did I give you more time on voir dire?

Yes, I did, 25 minutes.  I usually regret that, but I've already granted it.

MR. FIELDS:  We're aware we don't have to use all of it, your Honor.

THE COURT:  You're stealing my lines.

So the general information, Ms. Myhaver can give you that, but that's the usual questions.  I will ask about prior

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294   (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

jury experience.

Have the parties submitted to the Court a joint statement of the case that they wish for the Court to read as part of the voir dire?

MS. COBB:  Your Honor, we tried.  There were some disagreements about some of the language defining a true threat, which I think is going to kind of spill over into all of our discussions about instructions.

THE COURT:  Okay.

MS. COBB:  The Court has just issued its order on the motion to dismiss, which I think gives us a little bit of a glimpse into how it's thinking about things, so when we get to instructions, I do have some ideas.

THE COURT:  Well, let's table that.  But I will want -- if you all agree, fine.  If not, I will make up my own, which nobody ever likes, so I encourage you all to figure out one you like.

Now, with regard to the questions that the offense relates to alleged threats that did not result in actual violence, that is not a question that this court is inclined to ask.  It seems to me that that's more appropriate for the parties to deal with.  Unless you can give me a really good reason why I need to do that, but it seems to me, better and more appropriate for the parties to delve into that and be able to ask follow-up as jurors respond.

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

MR. FIELDS:  I'm sorry, your Honor, I want to make sure I understand the Court's ruling.  There's a question you will not allow us to ask?

THE COURT:  No.

MR. FIELDS:  Okay.

THE COURT:  I'm not saying I won't allow you to ask it.  I'm just saying, all we're talking about here is what the judge is going to ask versus what you all are going to ask.

MR. FIELDS:  Thank you, your Honor.

THE COURT:  And just for clarification for future, when I ask for your voir dire questions, I know a lot of the judges require you to give them everything, I don't.  All I need you to give me is if you want me to ask the question instead of you.  So for example, in sexual assault cases, there are questions that are very sensitive sometimes that you may jointly believe that the Court should ask instead of the parties.  Those are the kinds of things.

There may be questions related to, I don't know, racial animus that you would prefer and you jointly agree that the Court ask as opposed to the individual lawyers.  I will tell you, candidly, I am a proponent of the lawyers asking the questions.  Maybe it's my own bias, in my day, I'd rather ask the questions when I was the trial lawyer than have the judge ask the question, but that doesn't mean that that applies in all situations.

51

24-cr-00320-RMR   Final Pretrial Conference   May 13, 2025

So all I'm asking you here is, are there questions that you believe the Court should ask, as opposed to any individual lawyer asking.

Now, I will ask the question, have you or close friends or relatives been the victim of a crime.  I do ask those questions in a criminal case.

I will also ask, have you ever been, yourself, a defendant in a criminal case, or had a family or close friend who was a defendant in a criminal matter.

And I will ask the question, to what extent, if any, have you read or heard any publicity or news reports relating to this trial or the Defendants.

And my clerks will keep track of these questions that I am going to ask, okay.

I will ask about law enforcement.  The way the government has put these questions at 50, 51 and 52, I'll ask those specific questions.  Those questions are also similar for the Defendant, Bernard's proposed voir dire questions related to the FBI, DOJ and law enforcement.  So those should be covered by the prior questions.

I will ask, unless you tell me otherwise, Mr. Glover, you proposed question 11, questions about bias, prejudice and fairness, the Court would be willing to ask that question. This case may involve evidence about symbols of racial hatred during a political campaign, have you had personal experiences

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

with racial discrimination that might make it difficult for you to be objective about the evidence in this case.  I will limit it to that, though.  And I won't be asking follow-up questions, I will leave that to you.  Unless you want me not to ask that question and you can ask it yourself.

MR. GLOVER:  No, your Honor, I appreciate the Court asking that.

THE COURT:  All right.  That is the extent of the questions that the Court intends to ask, unless something else obviously comes up, all right.

So normally, what we will do is we'll ask the qualification questions.  I always follow it up, inevitably something gets missed, somebody who has been convicted of a crime punishable by more than a year or is currently pending criminal charges, so inevitably, something like that comes up, so I will ask those kind of qualification questions.  Then I will ask the jury to answer the general questions; name, what do they do, family members, that kind of stuff.  Then I will go into these additional questions.  And we'll deal with anybody that cannot be fair and impartial.

I will replace anybody who says they cannot and meets the qualification for cause.  How I handle that is I do not ask you -- I know there's a debate amongst even our own judges here, whether or not we make you invoke and challenge for cause before the whole jury venire, I do not.  I will ask you to

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

approach, I will ask you if you have a challenge for cause or if I'm going to excuse somebody for hardship, I'll ask you to approach.  We will say, any objection to dismissing Juror No. 3 for cause, they indicate, you know, blah, blah, blah, blah, you'll tell me whether you object or not.  And then we'll move -- once we clear through all that, we'll have the new juror come forward.  If we have someone else, we'll have them answer the questions, et cetera.  Once we pass for cause, then I will turn the questions over to you all.

Any questions about any of that?

Let's talk about jury instructions.  I guess the question I would lead off with is, I know that these were probably prepared before my rulings on the motions to dismiss, I had hoped that those rulings would help to ferret out some of these issues and clear up where we are.

Are there any changes to these instructions at this stage, or is this really just for preservation of the record?

MS. COBB:  I'm wondering, your Honor, since we do now have your opinion on the motion to dismiss, I wonder if it -- and this is a question -- does it make sense for us to go back to the well and try and work it out?

THE COURT:  Well, you don't have to wonder.  You are reading my mind.

MS. COBB:  Okay.

THE COURT:  I do think it makes sense, again -- look,

24-cr-00320-RMR    Final Pretrial Conference    May
13, 2025

you have preserved your objection on the record.  And if you want -- you tendered alternate versions.  So you can resubmit it if you want or do it in chart format, however you want, so that when it goes up to the circuit, it's clear to them what you objected to and when, because they're pretty particular about that.  So I'm fine with however you want to do it.  But at the end of the day, we have to come to some conclusions about the instructions that we're going to give to the jury.

And some of these I recognize that the Defendant thinks are just wrong and they want me to give a different instruction, and vice versa, right.  I understand that your objection is preserved.

But understanding where I have ruled, what can we agree on, in terms of the language that we will submit to the jury?

If you can agree, fabulous.  Tell me you can agree pending your objection.

If you can't agree, even in light of my prior rulings, those are the ones I want to see, and we'll try to get ruled on, okay.  And I would hope there's really not that much left.

All right.  How long do you need to do that?

MS. COBB:  I actually drafted some things.

THE COURT:  Having read my mind, you have some proposals.

MS. COBB:  So I have some copies or I can just email

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR     Final Pretrial Conference     May 13, 2025

it everybody if that helps to get it done in the next few days or however you want to do it.  I'm open if we want to talk while the Court takes a recess.

THE COURT:  Why don't we do this, given my optimism that you all are going to be able to work through this stuff, why don't we do this -- what day is today?

MS. COBB:  It's Tuesday.

THE COURT:  It's been a long day, I lost track of what day it is.  Today is Tuesday.

Why don't we do this, by Thursday at noon, you all submit to me revised instructions or your chart, however you want to do it, and identify specifically any instructions where there is still a dispute.  And I can hear argument if we need to do that.

I guess I could do it Thursday morning.  Is that a possibility?  I'm looking at my team.

THE DEPUTY CLERK:  Yes, your Honor.  Sorry, your Honor, I had my days mixed up.  Give me just a moment.

We could do this Thursday morning at 10:00 a.m.

THE COURT:  So what I will need is for you all to submit your revisions -- and even if they're not all done, give me a heads up if you're going to need to have a hearing on the 15th.  I will set aside the 15th at 10:00 a.m. to hear argument on the instructions that still remain in dispute.  Again, understanding -- and you set forth that you are preserving your

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

objection, but understanding the Court's prior ruling, this is the instruction that we can agree on or these are the particular words we're not agreeing on in this instruction, all right.

MS. COBB:  Understood, your Honor.

Ms. Blackcloud is asking me that if we do need a hearing on Thursday, if I could do it in her absence because she has to work.

THE COURT:  If she wishes to waive her presence that day, she may.

MS. COBB:  Yes, she does.  Thank you, your Honor.

MR. GLOVER:  Similarly, your Honor, Mr. Bernard would ask to not be brought in.

THE COURT:  All right.  Is he waiving his presence --

MR. GLOVER:  Yes.

THE COURT:  -- at the hearing, should we have it, on the 15th?

MR. GLOVER:  Yes, your Honor, he is.

THE COURT:  If it is short, we can do it by VTC.  I don't know where counsels' offices are, but if you are making the request, we can do that.  So you may do that, if you need to.

We have covered a lot of ground.  Is there anything else?

MR. FIELDS:  Not that the government can think of,

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294   (303)335-2105

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

your Honor.  Thank you very much.

THE COURT:  All right.

MR. GLOVER:  Your Honor, there is, I guess, a bit of a unique request.  Docketed at 59, Magistrate O'Hara in -- I believe, being responsive to a request from Ms. Blackcloud has allowed contact between Mr. Bernard and Ms. Blackcloud, but only if both lawyers are present.  I'm sure the Court can appreciate logistically how this is sometimes difficult, seeing as Mr. Bernard is at the FDC, and so we were wondering if the Court would entertain, since we are all here now, allowing us some time to meet briefly, since both counsel are present and both Ms. Blackcloud and Mr. Bernard are present.  I have done it --

THE COURT:  So you want to just meet here?

MR. GLOVER:  Right.

THE COURT:  Since all counsel are here, you're not asking for an exception to the order --

MR. GLOVER:  No.

THE COURT:  -- you are just asking, can we do this now?

MR. GLOVER:  Can we effectuate the order, given we have all parties present here.

THE COURT:  So Mr. Salas, can we accommodate that today?

MARSHAL:  Yes, Judge, can you repeat that, I

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294  (303)335-2105

58

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

apologize.

THE COURT:  So the two defendants here are under an order that they may only meet when both of their attorneys are present.  Since everybody is present here today, they'd like to meet here today.  Can we accommodate that?

MARSHAL:  Yes, Judge, we can make that happen.

THE COURT:  And will we do that here in the courtroom, or are they going to meet in the marshal's office?  Where do you want this to happen?

MARSHAL:  How long, approximately, are we talking about to meet?

THE COURT:  Mr. Glover.

MR. GLOVER:  30 minutes, your Honor, I think would suffice.

MARSHAL:  What we can do, Judge, is take them down to the interview room, and we can have our Defendant on our side of the cell block and have the out-of-custody Defendant on the other side with their respective attorneys.

THE COURT:  That's what we will do then.

MS. COBB:  Thank you.

MR. GLOVER:  Thank you, your Honor.

THE COURT:  Thank you.  Thank you, Mr. Salas.

MARSHAL:  Yes, Judge.

THE COURT:  With that, we will be in recess.

And Mr. Bernard, you are remanded to the custody of

59

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

the marshals, and they will take you down so that you can have the meeting as we just discussed.

Ms. Blackcloud, you are still under the terms and conditions of your bond.

We will be in recess.

(Adjourned)

24-cr-00320-RMR    Final Pretrial Conference    May 13, 2025

I hereby certify that the foregoing is a true and accurate transcript, to the best of my skill and ability, from my stenographic notes.

*Sadie L. Herbert*
Official Court Reporter
U.S. District Court

SADIE L. HERBERT, RPR, RCR
901 19th Street, Denver, CO 80294   (303)335-2105