UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 24-CR-320-RMR

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ASHLEY DANIELLE BLACKCLOUD,

Defendant.

**SUPPLEMENT TO DEFENDANT'S OBJECTIONS TO INITIAL PRESENTENCE INVESTIGATION REPORT**

With the benefit of the Court's thoughts on the applicability of the U.S.S.G. § 3A1.1(a) enhancement from co-defendant Deanna West's sentencing hearing, Ashley Danielle Blackcloud, a.k.a. Trinity Blackcloud, submits the following to supplement her previous objection to the application of the 3-level enhancement in § 3A1.1(a). She continues to assert that the matter should have been submitted to the jury and that because the crime was not motivated by hate, the enhancement does not apply. *Unite States v. Patterson*, 119 F.4th 609 (9th Cir. 2024); U.S.S.G. § 3A1.1, Application Note 1. She writes to address the Court's position that *United States v. Woodlee*, 136 F.3d 1399 (10th Cir. 1998) controls the analysis here.

In *Woodlee*, several white men were harassing black men in a bar. When the black men left due to the relentless racial harassment, several of the white men followed. Co-defendant Robert Kinslow, who had not been involved in the

harassment in the bar, accompanied the white men to pursue the black men by car. Kinslow grabbed a gun and when the white men caught up with the black men during the car chase, Kinslow fired shots at the black men's car causing them to wreck. Kinslow said the § 3A1.1 enhancement should not apply to him because he had not been the one to select the victims based on race, he was instead recruited by others who had already selected the victims based on race. The Tenth Circuit rejected this argument finding that the only logical conclusion was that Kinslow shot at the men because of their race even if it was the other men who initially taunted the men because of their race:

> We do not believe simply because the other defendants made the initial decision whom to taunt Mr. Kinslow is relieved of his choice to join in the melee. The facts demonstrate he chose to point and fire a rifle at a car with three people in it because of the color of their skin.

*Id.* at 1414.In other words, even though it was the co-defendants that selected the man based on race to verbally harass them and give chase, it was Kinslow that selected the men based on their race to shoot at them, so § 3A1.1 could apply to him due to the "intentionally selected any victim" language of the guideline.

Using the *Woodlee* analysis, as it relates to co-defendant West, the Court found that the § 3A1.1 enhancement would not apply to West because it was co-defendant Derrick Bernard who selected the listed victim in this case based on race and West only agreed to join the conspiracy after the selection was made to carry out Bernard's plan.

The same is true for Blackcloud. West testified that Bernard was "lead on

everything, director of how things were doing to play out" and Blackcloud's role "was to help and assist." Trial 3, p. 318. West described that Blackcloud and she were involved in executing the plan but that it was "mainly Phoenixx, but through Trinity" who instructed her on what to do. Trial 3, pp. 334, 407. It was "Phoenixx" who talked to them about the plan to push the images out on social media and West and Blackcloud worked together to execute Bernard's plan. Trial 3, pp. 350, 368, 370. It was Bernard who told Blackcloud that "I got a plan" and who told Yemi Mobolade that he was "mobilizing my squadron in defense and for the final push…." Initial PSR, Doc. 225, ¶ 8. And the PSR concludes that Blackcloud was a follower of Bernard's and that she was not the mastermind of the plan, rather it was Bernard who was directing Blackcloud and West to burn the cross and disseminate the video on social media. *Id.*, ¶ 18.

This case is not like Kinslow's in *Woodlee*. In Kinslow's case, the co-defendants initiated the racial harassment. Kinslow joined in but it was Kinslow who escalated the event into a shooting, all on his own and after he joined to give chase of the men based on their race. In this case, Bernard directed Blackcloud and West on how to accomplish the plan. There is no evidence that Blackcloud escalated the event beyond Bernard's initial plan. The evidence is to the contrary via West's consistent testimony that it was Bernard's idea to burn the cross and he directed West and Blackcloud as to what to do. Bernard's own words via text messages to Blackcloud and Mobolade were that it was *his* plan. Blackcloud only agreed to join the conspiracy after the selection was made. The enhancement should not apply to her under the *Woodlee*

rationale.

In addition, the evidence at trial was that the "selection" of Mobolade was not to be a "victim" of anything, which is required under this guideline. West testified at trial that the cross burning and "concerned citizen" email were meant to be a political statement, drawing attention to the existence of racism in Colorado Springs. Trial Vol. 3, p. 431. West testified that the idea was to rally voters in support of Mobolade. Trial Vol. 4, pp. 431, 449. The intent was not to actually threaten Mobolade: West said that none of the defendants would ever do that and none of them had any reason to do that. *Id.* According to West, the intent was to get out the vote for Mobolade. Trial, Vol. 3, pp. 440, 449. West said the whole thing was a publicity stunt, not a hate crime. Trial Vol. 3, p. 446. West said that the stunt was directed at the community, not one person in particular. Trial Vol. 3, p. 448.

<div style="margin-left: 40%;">

Respectfully Submitted,

BRITT M. COBB, LAW OFFICES
Attorney for Defendant Blackcloud

s/        *Britt M. Cobb*

Britt M. Cobb (30099)
3570 E. 12th Avenue, Suite 200, #142
Denver, CO 80206
(303) 351-1628
britt@brittmcobb.com

</div>

Dated: January 8, 2026