IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 24-cr-00320-RMR

UNITED STATES OF AMERICA,

> Plaintiff,

v.

> 2.  ASHLEY DANIELLE BLACKCLOUD,

> Defendant.

---

**RESPONSE TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

---

The government opposes the defendant's motion for Downward Variance and Brief in Support filed on January 2, 2026.  ECF No. 268 ("Defendant's Motion").

The court should deny Defendant's Motion and instead apply an *upward* variance for all of the reasons set forth in the Government's Sentencing Statement and Motion for Upward Variance, ECF No. 271, which the government incorporates here.

Section D of the Defendant's Motion makes seven arguments for a downward variance: (1) the hate crime enhancement overstates the severity of the offense, (2) she should get the benefit of a lower sentence for accepting responsibility even if the Guideline provision doesn't apply because defendants should not be punished for pursuing First Amendment defenses, (3) the offense conduct here was outside the heartland of § 844(e) cases, (4) Blackcloud's personal history and characteristics warrant a downward variance, (5) compliance with her bond conditions means she

1

does not need specific deterrence, (6) she had a similar role in the offense as West, and (7) defendants in other threat cases have often received variances. None of these arguments warrant the drastic remedy of varying downward almost 100%.

## I.    ARGUMENT

The defendant's first argument is yet another iteration of the same argument that she made in the motion to dismiss the indictment denied by this court, ECF No. 71; in the closing argument rejected by the jury, Trial Tr. Vol. 5 at 809 – 826, ECF No. 211; again in her motion for a judgment of acquittal, ECF No. 212; and in her objection to the PSR, ECF No. 231. There is no need to rehash the parties' opposing characterizations of the evidence once again. The government — like the jury — disagrees. The government once again incorporates the arguments in made in its responses to those prior motions and in its closing arguments, which are docketed at ECF Nos. 91, 222, and 236 and transcribed in Volume Five of the Reporter's Transcript at 783 – 809 and 833 to 836. Docketed at ECF No. 211. In short, the government does not believe that ulterior motives can justify criminal acts. *See, e.g., United States v. Washington*, 705 F.2d 489, 493 (D.C. Cir. 1983) ("Proof of a good motive thus is not probative on the issue of such intent."). Her continued belief that what she did should not be a crime — that is, that the jury was wrong — is not a reason for a variance and it would be an abuse of discretion to base a variance on such reasoning. *See, e.g., United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008) (explaining that it would "not hesitate" to reverse a sentence if a

judge based that sentence on doubts about the jury's verdict and vacating a no-jail sentence when there were indications this might have occurred).

The defendant's second argument is also, in the government's view, simply another effort to reframe her objections to the PSR filed at ECF No. 231. The government disagrees and incorporates the arguments it made in its response, docketed at ECF No. 236. In short, the defendant didn't "just" make legal arguments. She also cross-examined a victim in an effort to make factual arguments that both belittled his stated fear at what happened to him and his family and cast doubt on his credibility to describe his own emotional response to seeing a symbol of racial terror illuminating his campaign sign by firelight. Trial Tr. Vol. 2, at 90-128, ECF No. 208. Then she tried to convince the jury that the victim did this to himself by proposing that they adopt her co-defendant's trial testimony (or at the very least consider it enough for reasonable doubt). Trial Tr. Vol. 5 at 821-22, ECF No. 211. Insulting the victim of a cross-burning by suggesting that he brought it on himself and his family — or was lying to a jury — is not asking "juries to check the government." Def. Mot. At 8. It is willfully and obstinately trying to find a way to justify, excuse, or even receive approbation for using a threat to leverage political ends. The fact that she continues to minimize and otherwise refuse to accept that her actions were criminal does not warrant a lower sentence. It demonstrates disrespect for the law and contempt for its application by the jury that should result in a *higher* one.

3

The defendant's third argument has also been presented throughout this case, first in the motion to dismiss the indictment and then again in the motion for a judgment of acquittal.  The government once again incorporates its responses. Her frustration with how the case has been charged (an issue resolved by the Court's Order denying her Motion to Dismiss Counts, ECF No. 171) has no bearing on whether her *conduct* — engaging in a cross burning that the jury found to be a True Threat — should be punished. The defendant cites no cases — and the government is aware of none — suggesting that a defendant should get a higher or lower sentence because a Court believes that one statute covering the conduct should have been used instead of another (i.e., that a defendant convicted of mail fraud should get a higher sentence than one who commits wire fraud, or a defendant who makes a threat by wire should receive a higher sentence than one who makes one by mail). A prosecutor's decision to choose one statute over another is not part of the § 3553(a) analysis and varying on this basis would be improper. If the argument is, instead, simply that violations of 18 U.S.C. §  844(e) and its cross-reference to 2A6.1 do not capture the harms here, then the government agrees: it simply believes that 2A6.1 *underestimates* the harms and circumstances reflected in a scheme that uses a symbol of racial hatred to threaten a Black man in an effort to obstruct an election. ECF No. 230 at 3-9. The defendant does not cite any analogous guideline that would support a lower offense level and a corresponding rationale for a downward variance.

4

Aspects of Blackcloud's background and circumstances are certainly mitigating.  She has suffered trauma.  But this fourth argument puts too much weight on one factor to the exclusion of all others.  Furthermore, the argument that she should get a 100% variance because of letters from friends or because she has sought to "uplift others, stand up to bullies and advocate for social justice" completely ignores the conduct at issue here.  A jury concluded beyond a reasonable doubt that, at least in this instance, *she* was the bully.  She tried to use a threat against an innocent victim to leverage her preferred outcomes and be influential on social media.  Giving her no jail time at all would completely discount the harms she imposed on the victim, privileging her personal trauma over the substantial psychological harms she imposed on the victim and the unquantifiable but no less real harms imposed on the integrity of an election that might now be questioned because of her efforts to use criminal means to influence it.  *See United States v. Morgan*, 635 F. App'x 423, 461 (10th Cir. 2015) (Holmes, J., concurring) (noting that a non-custodial sentence is *qualitatively* different from imprisonment, effectively accords *no* weight to deterrence, and should receive additional scrutiny when the guidelines call for imprisonment).

Her fifth argument is also insufficient to deviate so heavily from the guidelines or to outweigh the arguments raised in the government's motion for an upward variance.  The fact that Blackcloud has complied with her bond conditions does not justify a drastic downward variance. *United States v. Jimenez*, 2010 WL 6385382, at *1 (S.D.N.Y. March 24, 2010) ("It is expected that those on supervised

5

release will comply with the conditions of supervised release, and there is nothing so exceptional about the defendant's compliance that would warrant a variance from the sentence initially imposed by the Court.")  Simply doing what the law and the Court demand when you know someone is watching and consequences will be severe does not erase the harms imposed on the victim and would essentially adopt a "one free foul" rule for criminal justice.  That would actually undermine deterrence, is inconsistent with respect for the law, and would not impose just punishment for the crime.  It would, again, completely ignore and erase the victims.

Blackloud's sixth argument is not consistent with the record.  She is not similarly situated to West, for all of the reasons the government already set forward in its Response to the Defendant's Objection to the Presentence Investigation, ECF No. 236 at 8-9. West was shunted out of bed in the middle of the night by her employer/landlord and his girlfriend, taken to a strange location, and then asked to use her phone to create the burning cross video so that Blackcloud and Bernard could maintain plausible deniability and use West as a patsy.  Blackcloud's DNA was on the paint can that sprayed a racial slur on a Black man's campaign sign, she drafted the email with the threat, she gave instructions to West, and she gloried in and encouraged social media distribution of the threat. *See* ECF No. 230 at 3-5 (describing these details and referencing exhibits).

Finally, even if there are variances in many threat cases, the government contends that the best points of comparison are to other cases involving Category I offenders caught burning crosses and not just to threats very generally.  ECF No.

271. *See also United States v. Chandia*, 675 F.3d 329, 342 (4th Cir. 2012) ("[C]omparing the sentences of other defendants with dissimilar offenses, circumstances, and criminal histories is unavailing.").  And even if a variance were warranted, it would not justify the massive 100% no-prison-sentence variance that she seeks here. In the government's view, any variance would start from a range that starts at the 37-46 months, which takes into account her efforts to obstruct an election and target a candidate for political office because of his race and the resulting racial tension she cynically believed would advance her influence and objectives.

## II.    CONCLUSION

The defendant should receive a sentence that advances the purposes of criminal sentencing set forth in § 3553(a).  For all of the reasons set forth above, and of the reasons set forth in the Government's Sentencing Statement and Motion for an Upward Variance, a sentence of 37 months — not probation — does that here.

Respectfully submitted,

PETER MCNEILLY
United States Attorney

By: *s/Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By: *s/Candyce Cline*
Candyce Cline
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Candyce.Cline@usdoj.gov
Attorney for the Government

7

**CERTIFICATE OF SERVICE**

I certify that on this 8th day of January 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

s/ *Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov