**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 1:24-cr-00320-RMR

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. DERRICK PATRICK BERNARD,

      Defendant.

---

**DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

---

Defendant, by and through undersigned counsel, submits his objections to the February 11, 2026, Presentence Investigation Report (ECF No. 310) ("PSIR").

## I. GENERAL OBJECTION TO THE OFFENSE CONDUCT NARRATIVE (¶¶4–19)

The PSIR's offense conduct narrative is derived not from the trial record but from discovery materials and a telephonic conversation with FBI Special Agent Ethan Doherty. PSIR ¶5. Mr. Bernard was convicted by jury trial. This Court presided over that trial and heard the evidence firsthand. The Probation Office acknowledges it "does not conduct an independent investigation for cases that are tried by a jury." PSIR ¶4. The offense conduct section should therefore reflect the evidence offered at trial — not the investigating agent's characterization of the evidence. Mr. Bernard respectfully requests that the Court rely on its own assessment of the trial evidence, rather than the agent's narrative, in making its factual findings for sentencing purposes.

## II. SPECIFIC FACTUAL OBJECTIONS

**A. OBJECTION TO PARAGRAPH 8 — Characterization of Whether Y.M. Read Defendant's Messages**

Paragraph 8 states that "it is unknown if CANDIDATE 1, Y.M., ever read BERNARD's message" and that "it is undetermined if CANDIDATE 1, Y.M., was aware of BERNARD's scheme." This characterization is inaccurate and inconsistent with the trial evidence.

The evidence presented at trial was consistent with Y.M. having read the messages sent by Mr. Bernard. In fact, he PSIR itself notes that on April 25, 2023, Bernard and Y.M. spoke on the phone for approximately five minutes (¶13), and that after the election, Bernard texted Y.M. directly and Y.M. appeared to engage with Bernard (¶16). The suggestion that it is "unknown" whether Y.M. read messages directed to him — when the evidence shows an ongoing communicative relationship — is inaccurate. Mr. Bernard objects to this characterization and requests the Court rely on the trial evidence to make its own determination regarding the nature and extent of communications between Mr. Bernard and Y.M.

## B. OBJECTION TO PARAGRAPH 10 — Implication That Bernard Was Physically Present at the Scene

Paragraph 10 states that "BERNARD remained in the vehicle" while Blackcloud and West carried out the cross burning and defacement of Y.M.'s campaign sign. Mr. Bernard objects to this factual assertion. The government did not prove at trial that Mr. Bernard was physically present at the intersection of North Union Boulevard and East Fillmore Street on April 23, 2023. The jury's verdict found Mr. Bernard guilty of conspiracy and aiding and abetting — neither of which requires physical presence at the scene of the substantive offense. Placing Mr. Bernard at the scene without adequate evidentiary support overstates the factual basis for the conviction. Mr. Bernard asserts that his presence on scene was not established by the trial evidence and requests the Court rely on the trial evidence to make its own determination regarding this fact.

## C. OBJECTION TO PARAGRAPH 17 — "Leader and Mastermind" Characterization

Paragraph 17 describes Mr. Bernard as "the leader and mastermind behind the instant offense" who "orchestrated the cross burning and racially defaced campaign sign and directed BLACKCLOUD and WEST to carry out the instant offense." Mr. Bernard objects to this characterization in its entirety.

This conclusory description reflects Agent Doherty's theory of the case, not findings supported by the trial evidence. Mr. Bernard respectfully requests that the Court rely on its own assessment of the trial evidence, rather than the agent's narrative, in making its factual findings for sentencing purposes. Notably, the PSIR's own factual narrative does not support the "mastermind" label. The PSIR alleges that:

- Blackcloud and West physically executed the cross burning and sign defacement (¶10);

- Blackcloud researched contact information for media outlets and organizations (¶11);

- West conducted her own internet searches for "complaint letter against racist acts" and located the "Hate in Elections" document that was later incorporated into the email (¶11);

- Blackcloud and West together created the fake Gmail account and drafted and sent the email to media outlets (¶12);

- West independently took the video and photographs (¶10);

- West, using her own screen name "Vital Sweetz," independently posted on FFTSWBN's Facebook page (¶15);

- West "was also a follower of BERNARD's and was dependent on BERNARD for housing and employment" (¶19) — which suggests a personal dependency dynamic, not a criminal command structure.

3

The PSIR's own recitation of facts describes three participants who each performed distinct tasks in furtherance of a shared objective. Nothing in the factual narrative demonstrates that Mr. Bernard exercised organizational control, decision-making authority, or supervisory power over his co-defendants in a manner distinguishable from ordinary co-conspiracy. Under USSG §3B1.1, Application Note 4, the Court should consider factors including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."(See USSG §3B1.1, Application Note 4)

### III. OBJECTION TO PARAGRAPH 31 — THREE-LEVEL HATE CRIME MOTIVATION ENHANCEMENT UNDER USSG §3A1.1(a)

**A. The Enhancement Is Inapplicable Because the Offense Was Not Motivated by Hate or Animus**

The PSIR recommends a three-level enhancement under USSG §3A1.1(a) on the ground that "the defendant would not have committed this crime if Candidate 1, Y.M. was not a person of color and therefore, the crime was motivated by Candidate 1, Y.M.'s race." PSIR ¶31. Mr. Bernard objects. The enhancement requires more than but-for racial causation; it requires that the defendant was motivated by hate or animus toward the victim on account of the victim's protected characteristic.

The Ninth Circuit squarely addressed this issue in *United States v. Patterson*, 119 F.4th 609 (9th Cir. 2024). In *Patterson*, the court held that although the text of §3A1.1(a) uses the phrase "because of" without expressly requiring hatred, the guideline's title ("Hate Crime Motivation"), its legislative history, and its purpose all compel the conclusion that the enhancement requires proof beyond a reasonable doubt that the defendant was motivated by hate or animus. *Id.* at 613–

14. The court specifically rejected the argument that intentional selection of a victim based on a protected characteristic alone — without accompanying animus — suffices. *Id.* at 614–15.

The *Patterson* court drew on the Second Circuit's reasoning in *United States v. Nelson*, 277 F.3d 164, 188 n.21 (2d Cir. 2002), which held that under similar "because of" language in 18 U.S.C. § 245(b)(2), not all offenses committed "because" a victim belongs to a protected group are motivated by bias in the relevant sense. As the *Nelson* court explained, a defendant might select victims from a protected group for purely instrumental reasons unrelated to animus — a scenario that does not implicate the purposes of hate crime legislation.

**B. The Facts Here Affirmatively Negate Animus**

The Probation Officer's own reasoning — that "the defendant would not have committed this crime if Candidate 1, Y.M. was not a person of color" — proves only but-for racial causation. It does not prove, and cannot prove, that Mr. Bernard was motivated by racial hatred or animus toward Y.M.

To the contrary, the undisputed evidence establishes the opposite of racial animus. Mr. Bernard is himself Black. Y.M. is a person of color (Black-African). The PSIR's own factual narrative demonstrates that Mr. Bernard's motivation was to *help* Y.M. win the mayoral election against a white opponent — not to harm, demean, or terrorize Y.M. or any racial group. Bernard's own words confirm this: he told Blackcloud he wanted to prevent "the klan" from retaking the city (¶8); he messaged Y.M. about "mobilizing my squadron in defense" (¶8); after the election, he congratulated Y.M. and sought political favors (¶16). This conduct, however misguided and criminal, reflects political opportunism and racial solidarity, not racial hatred.

The §3A1.1(a) enhancement exists because bias-motivated offenses inflict distinct and amplified harms — they terrorize targeted communities, reinforce historical subordination, and

signal to protected groups that they are unsafe. *See* USSG §3A1.1 cmt. background (enhancement implements Congress's directive regarding offenses where "the defendant had a hate crime motivation"); *See Patterson*, 119 F.4th at 613–14 (quoting H.R. Rep. No. 103-244, at 5, 103rd Cong., 1st Sess. 1993, 1993 WL 374132, legislative history to the *Hate Crimes Sentencing Enhancement Act*, establishing that victim selection "must result from the defendant's hate or animus toward any person for bearing" a protected characteristic). None of those policy rationales are present here. The defendant did not allegedly target Y.M. out of contempt for Y.M.'s race; the staged hoax was designed to garner public sympathy and support for a candidate of the same race as himself. Applying a "Hate Crime Motivation" enhancement to an offense motivated by racial solidarity rather than racial hostility would distort this enhancement and produce a result the Sentencing Commission did not intend.

## C. At Minimum, the Guideline Is Ambiguous and Lenity Applies

Even if the Court finds the text of §3A1.1(a) ambiguous as between a but-for causation standard and an animus standard — as the Ninth Circuit did in *Patterson*, 119 F.4th at 612 — the ambiguity should be resolved in Mr. Bernard's favor. The rule of lenity applies to the Sentencing Guidelines. See *United States v. Santos*, 553 U.S. 507, 514 (2008). An ambiguous sentencing enhancement should not be applied to impose additional punishment where the defendant's conduct falls outside the heartland of the provision's purpose.

### IV. OBJECTION TO PARAGRAPH 32 — TWO-LEVEL ROLE ENHANCEMENT UNDER USSG §3B1.1(c)

The PSIR applies a two-level enhancement under USSG §3B1.1(c) on the ground that Mr. Bernard "was an organizer, leader, manager, or supervisor" who "instructed codefendants

6

BLACKCLOUD and WEST to carry out the cross burning and racially defaced campaign sign." PSIR ¶32.

This enhancement rests entirely on the "leader and mastermind" characterization in Paragraph 17, which Mr. Bernard has challenged in detail in Section II.C above. For the reasons set forth there, the PSIR's own offense conduct narrative does not support a finding that Mr. Bernard exercised organizational control or supervisory authority over his co-defendants in a manner distinguishable from ordinary co-conspiracy. Under USSG §3B1.1, Application Note 4, the Court must consider factors including the exercise of decision-making authority, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, and the degree of control and authority exercised over others. The factual record — as detailed in Mr. Bernard's objection to Paragraph 17 — does not satisfy these factors. Mr. Bernard requests that the Court decline to apply this enhancement, reducing the Adjusted Offense Level by two levels.

## V. IMPACT ON THE GUIDELINES CALCULATION

If the Court sustains Mr. Bernard's objections to the §3A1.1(a) and §3B1.1(c) enhancements, the corrected guidelines calculation is as follows:

| | PSIR Calculation | Defendant's Calculation |
|---|---|---|
| Base Offense Level (§2A6.1) | 12 | 12 |
| Hate Crime Enhancement (§3A1.1(a)) | +3 | 0 |
| Role Enhancement (§3B1.1(c)) | +2 | 0 |
| Acceptance of Responsibility | 0 | 0 |
| **Total Offense Level** | **17** | **12** |
| Criminal History Category | V | V |
| **Guidelines Range** | **46–57 months** | **27–33 months** |

7

## VI. CONCLUSION

For the foregoing reasons, Mr. Bernard respectfully requests that the Court sustain his objections to the Presentence Investigation Report and calculate the advisory guidelines range accordingly.

Respectfully submitted this March 4, 2026.

TYRONE GLOVER LAW

*s/ A. Tyrone Glover*
A. Tyrone Glover #41529
3401 Quebec Street, Suite 9000
Denver, CO 80207
303-577-1655
tyrone@tyroneglover.com

*Counsel for Defendant Derrick Patrick Bernard, Jr.*

CERTIFICATE OF SERVICE

I certify that on March 4, 2026, I filed the foregoing **DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to United States Attorney assigned to this matter.

TYRONE GLOVER LAW

*s/ A. Tyrone Glover*
A. Tyrone Glover

*Counsel for Defendant Derrick Patrick Bernard, Jr.*