IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 24-cr-00320-RMR

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.  DERRICK PATRICK BERNARD, JR.

Defendant.

## SENTENCING STATEMENT

The government recommends that the Court impose a sentence of 57 months' imprisonment and the maximum available term of supervised release (the "Recommended Sentence"). Why should the Court sentence this defendant to a sentence that is almost five times longer than the one imposed on his co-defendant? Because his crime is five times worse: (1) he is at Criminal History Category V (Blackcloud was CHC I); (2) he was undoubtedly the leader whose instructions caused the crime to be committed; (3) his political motives for committing the crime are an aggravator; (4) his contempt for the courts runs so deep that he was willing to lie on the stand; and (5) nothing about his background mitigates his offense.

## I.    ALL OF THE FACTORS THAT THE COURT MUST CONSIDER WEIGH IN FAVOR OF THE RECOMMENDED SENTENCE

In fashioning a sentence, the Court must address each of the factors set forth

1

at 18 U.S.C. § 3553(a), including (1) the applicable United States Sentencing Guidelines (the "Guidelines"), (2) the nature, circumstances, and seriousness of the offense, (3) the history and characteristics of the defendant, and (4) the need to promote respect for the law, afford adequate deterrence, and protect the public from further crimes. Each fully supports the Recommended Sentence.

### A.    The Guidelines recommend a substantial prison sentence

The Probation Office's calculator puts the defendant in Criminal History Category V and Offense Level 17, which yields a recommended sentence of 46 to 57 months.  The government has filed an objection, which remains pending.  If the court concludes that the defendant's lied on the stand, then he should receive a two-level upward adjustment under U.S.S.G. § 3C1.1.  That would put the offense level at 19 and the corresponding sentencing range at 57 to 71 months.

### B.    The defendant's calculated use of a symbol of racial hatred to manipulate an election and attack a political candidate imposed substantial emotional and societal harms that fully support the Recommended Sentence (18 U.S.C. § 3553(a)(1) and (a)(2)(A))

This isn't "just" a case about threats to one man. It's a case about threats to democratic elections in the 21st century, where conspirators emboldened by perceived anonymity use digital media to spread falsehoods to manipulate the electorate. Testimony at trial showed that the defendant and Ashley Blackcloud had more ambitious goals. The victim's terror was simply a means to a larger end: corruption of the entire electoral process. In the government's view, this is one of those rare cases where a narrow focus on the offense of conviction fails to take into account the gravity

of the offense.

Pre-2025 United States Sentencing Guideline provisions support the conclusion that the crime here is more serious than a casual glance at the offense level might suggest. As the government argued in its statement regarding co-defendant Ashley Blackcloud, the Guideline Calculation in this case undervalues the severity of the offense by at least 6 offense levels. The offense conduct here is better viewed through the lens of U.S.S.G. § 2H2.1 which applies when someone uses the threat of force with the purpose of obstructing an election or in the shadow of the concerns that animated U.S.S.G. § 3A1.2 because the victim here was a candidate for public office.

The fact that recent amendments to the Guidelines have modernized sentencing by removing the long-outmoded difference between "departures" and "variances" is no reason to ignore the collective wisdom of the Sentencing Commission and its common-sense conclusion that election-related crimes are a more serious category of crime. *See* Amendment 836's changes to Chapter 5 were intended to be "outcome neutral." U.S.S.G. Supp. App'x B, Part III, p. 133 (May 1, 2025). "[T]he removal of departures from the Guidelines Manual does not reflect a determination by the Commission that the rationale underlying the deleted departure provisions is no longer informative or that a court should no longer consider such facts for purposes of determining the appropriate sentence." *Id.* Indeed, the Tenth Circuit has recognized that Guideline provisions can serve as useful heuristic devices that

harness the Sentencing Commission's expertise and the collective experience of district court judges around the country who benefit from having a common vocabulary and legal framework for measuring the severity of a crime. *See United States v. Whiteskunk*, 162 F.3d 1244, 1248 (10th Cir. 1998); *see also United States v. Mohamed*, 459 F.3d 979, 987 (9th Cir. 2006) (noting that whether styled as a departure of a variance, courts may still consult with the system of departures and that such consultations may bear on appellate review for reasonableness).

The defendant sought to exploit some of today's most vivid social anxieties — race-based terrorism and race-inspired mass-violence — in the same way that defendants in a prior era sought to exploit anxieties related to terrorism. Courts in that time period had no trouble concluding that substantial upward variances or departures were reasonable in light of the serious societal harms. *See, e.g., Mohamed*, 459 F.3d at 989 (citing several cases from other circuits affirming upward variances/departures in cases involving false threats). The defendant's willingness to conjure the specter of racial violence to further the scheme is an aggravator that fully supports the Recommended Sentence. *See Virginia v. Black*, 538 U.S. 343, 363 (2003) (noting the obvious: "burning a cross is a particularly virulent form of intimidation" with a "long and pernicious history as a signal of impending violence.").

The defendant used one of the most potent symbols of racial hatred in history as part of a cynical effort to obstruct an election, bolster his status as a social media influencer, and advance his own agenda by targeting a husband and father who was

4

seeking public office without regard to the substantial emotional harms he knew were inevitable. Everything about the crime was calculated and planned — by the defendant. To make it worse, the defendant's behavior in this case was actively criminogenic: he took advantage of relationships with his two co-defendants, actively recruited them into criminal conduct, and ruined their lives. This was a crime of choice for which there are no mitigating circumstances or justifications.

**C.    The Recommended Sentence accounts for the defendant's history (18 U.S.C. § 3553(a)(1))**

The defendant had a middle-class upbringing with a loving parent. Nothing about his background excuses, contextualizes, or mitigates the crime he committed here.

To the contrary, the crime he committed here is just another manifestation of a lifetime of anti-social behavior. Criminal history records show that he brought a weapon to school when he was fifteen and had already worked his way up the ladders of culpability from petty theft to grand theft. He wasted no time earning an adult felony conviction and pleaded guitly to a home invasion robbery when he was only eighteen. After that, *repeated* convictions for possessing a firearm as a felon show his complete contempt for the law.

Most glaring: the defendant committed this crime after arranging for a rival to be murdered. *While he was serving a prison sentence for a felony!* The chilling details of his crime are set forth in detail at ECF No. 51-1. He has been committing crimes since he was fifteen, and even incarceration presents a minimal impediment to his

5

ability to create harm in the community. The defendant's criminality is endemic wherever he goes, and his lengthy criminal history distinguishes him significantly from co-defendant Blackcloud. In short, his mental health issues and alcohol abuse do not explain, justify, or otherwise contextualize the crime here. The defendant's crime has absolutely no grounding in any personal history or circumstances. This was a crime of choice, willfully and intentionally perpetrated by an adult pursuing his own selfish interests without any outside pressures or coercion.

**D.    The Recommended Sentence would deter the Defendant from committing other crimes while deterring other would-be fraudsters from tearing at the bonds of trust that are vital to our general prosperity**

Specific deterrence supports the Recommended Sentence. Everything known about the crime, its circumstances, and the defendant's characteristics suggest that Derrick Bernard is the sort of person who makes criminal choices if he believes that he will not get caught or if he believes that the ends justify the means. The Recommended Sentence must deter others who might seek to tamper with the integrity of our elections.

Anything less than the Recommended Sentence would also undermine general deterrence. Threats against public officials have been on the rise for years. *See* Pete Simi et al., *Rising Threats to Public Officials: A Review of 10 Year of Federal Data*, 17 CTC Sentinel no.5 at 20 (May 2024), available at https://ctc.westpoint.edu/wp-content/uploads/2024/05/CTC-SENTINEL-052024-article-3.pdf (last access January 2, 2026). This increase reflects growing polarization and a perception that threats can

lead to public policy changes. As the authors of the study above conclude, the "cacophony of threats observed may be enough to weaken institutions, normalize societal violence, and degrade democracy." *Id.* at 26. The Recommended Sentence is necessary to bolster general deterrence, reversing these trends and making it clear that any perceived advantage to using criminal threats to achieve personally preferred policy outcomes is outweighed by the serious consequences.

**E.     Only the Recommended Sentence would impose just punishment and instill respect for the law from a defendant who has treated it with contempt**

The Recommended Sentence, given all of the circumstances, is just punishment that "reflects the gravity of the offense" and "takes into account the cost of the defendant's criminal conduct and the cost society must undertake to punish that offense." *See Simon v. United States*, 361 F. Supp. 2d 35, 44 (E.D.N.Y. 2005) (interpreting this § 3553(a) factor with support from legislative history and circuit precedent).

The Recommended Sentence would also promote the respect for the law. It would send a message that intentional efforts to make True Threats will be punished, consistent with the longstanding view that such statements impose real societal costs and substantial harms on victims. It would also make clear that the Court will not tolerate perjury. *See* ECF No. 328 (detailing how Bernard tried to mislead the jury at trial).

7

F. **The Recommended Sentence is consistent with criminal sanctions imposed for cross-burning in other cases (18 U.S.C. § 3553(a)(6))**

The Recommended Sentence also avoids unwarranted disparities among defendants who have similarly been found guilty of burning crosses to make threats.

The government's position that § 2A6.1 fails to fully capture the harms of the crime is bolstered by the fact that courts routinely impose sentences at or above the Recommended Sentence in other cases featuring cross burning.

| Case | Sentence |
|---|---|
| *United States v. Cox*, 1:22-cr-124, ECF No. 36 (S.D. Miss. March 13, 2023) | 42 months |
| *United States v. Brown*, 1:20-cr-26, ECF No. 164 (W.D. Va. Aug. 20, 2021) | 18 months |
| *United States v. Starrett*, 2:19-cr-32, ECF No. 23 (S.D. Miss. Nov. 15, 2019) | 36 months[1] |
| *United States v. Pietri*, 8:15-cr-217, ECF No. 41 (M.D. Fl. March 23, 2016) | 37 months |
| *United States v. Mikulyuk*, 3:09-cr-106, ECF No. 25 (N.D. Ind. Dec. 22, 2009) | 42 months |
| *United States v. Branscum et al.*, 4:10-cr-282, ECFs No. 66, 73, 74 (E.D. Ark. Jan. 25, 2012 and Feb. 1, 2012) | 18 months 18 months 7 months |
| *United States v. Danforth*, 5:09-cr-250, ECF No. 92 (W.D. La. May 27, 2010) | 48 months |
| *United States v. Youngblood*, 2:07-cr-20358, ECF No. 11 (E.D. Mich. Dec. 14, 2007) | 36 months |
| *United States v. Magleby*, 2:98-cr-565, ECF No. 155 (D. Utah Dec. 21, 1999) | 144 months[2] |

The median sentence length in the 837 cases reported to the Commission for

---

[1] The judge imposed a total 36 months sentence by imposing two 18-month sentences consecutive with one another.

[2] The defendant was subject to a consecutive mandatory minimum sentence of 120 years under § 844(h). The judgment notes a range of 24-30 months for the count related to the cross burning, suggesting that the court imposed a sentence for 24 months for that conduct.

the past five fiscal years (2020- 2024) involving application of U.S.S.G. § 2A6.1 was 15 months, with the average being 25 months.  United States Sentencing Commission, *Interactive Data Analyzer*, available at https://ida.ussc.gov/analytics/ saw.dll?Dashboard (last accessed January 2, 2026) (selecting "2A6.1" as "primary guideline" and referencing "Sentencing Length" under the "Sentencing Outcomes"). The Recommended Sentence is longer than these measures of central tendency, but any resulting disparity is warranted: as suggested by the similar sentences in other cross-burning cases and for the reasons set forth elsewhere in this submission, cross-burnings are uniquely serious crimes. The fact that this one targeted a major election makes it all the more serious and further supports the Recommended Sentence.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

## II.    CONCLUSION

The defendant should receive a sentence that advances the purposes of criminal sentencing set forth in § 3553(a). For all of the reasons set forth above, the Recommended Sentence does so.

Respectfully submitted,

PETER MCNEILLY
United States Attorney

By:    */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:    */s/ Candyce Cline*
Candyce Cline
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Candyce.Cline@usdoj.gov
Attorney for the Government

**CERTIFICATE OF SERVICE**

I certify that on this 5th day of March 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

s/ *Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov